06-3722-mb
In re: Weber

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2006
(Submitted: September 29, 2006    Decided: April 13, 2007)
Docket No. 06-3722-mb

-------------------------------------------------------x

TODD M. WEBER, SR., TAMMY J. WEBER,

     Debtors,

                -- v. --

UNITED STATES TRUSTEE,

     Appellant.

-------------------------------------------------------x

B e f o r e :  WALKER, LEVAL AND CALABRESI, Circuit Judges.

Motion for leave to take a direct appeal from a decision of the United States Bankruptcy Court for the Northern District of New York (Stephen D. Gerling, Chief Judge) denying a request by creditor CFCU Community Credit Union that the bankruptcy court limit debtors-appellees' homestead exemption to $20,000.

DENIED.

GUY A. VANBAALEN, Assistant United States Trustee, Utica, New York, for United States Trustee.

RALPH W. NASH, The Crossmore Law Office, Ithaca, New York, for Creditor-Appellant.

LAURA M. HARRIS, Harris Law Office PLLC, Syracuse, New York, for Debtors-Appellees.

-1-

JOHN M. WALKER, JR., Circuit Judge:

In this motion for leave to take a direct appeal to the United States Court of Appeals from the order of the United States Bankruptcy Court for the Northern District of New York (Gerling, Chief Judge), creditor-appellant CFCU Community Credit Union ("CFCU") invokes § 1233 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). 28 U.S.C. § 158(d)(2). CFCU contests the bankruptcy court's retroactive application of New York's homestead exemption to debtors-appellees' property. See In re Weber, No. 06-60457 (Bankr. N.D.N.Y. July 10, 2006). The scope of § 1233, which authorizes direct appeals under certain defined circumstances, is a matter of first impression. Cf. In re Bayless, No. 06-31517, 2006 WL 2982101, at *1 n.2 (Bankr. E.D. Tenn. Oct. 18, 2006) (noting Sixth Circuit's decision to accept a direct appeal). We deny the motion for a direct appeal in this case.

**BACKGROUND**

In March 2006, Todd M. Weber, Sr. and Tammy J. Weber filed for bankruptcy pursuant to Chapter 7 of Title 11 of the United States Code. In their petition for release, the debtors claimed a combined homestead exemption in the amount of $100,000 with respect to real property located in Richford, New York. Creditor-appellant CFCU, holder of an unsecured claim dating from 2002, objected, see Opp'n to Objection to Homestead Exemption at

-2-

1; CFCU argued that a 2005 amendment to the New York Civil Practice Law and Rules, see L. 2005, c. 623, § 1 (eff. Aug. 30, 2005), amending N.Y. C.P.L.R. § 5206(a), which raised the homestead exemption from $10,000 to $50,000 per person, should not be applied retroactively, Aff. in Supp. of Mot. at 2. Relying on In re Little, No. 05-68281 (Bankr. N.D.N.Y. 2006), the bankruptcy court denied CFCU's motion to limit the exemption to $10,000 per person. CFCU, wishing to bypass appeal to the district court, then sought leave from the bankruptcy court to appeal directly to this court. The bankruptcy court granted leave. See Certification to the U.S. Ct. of Appeals from the U.S. Bankruptcy Ct. for the Northern District of New York Pursuant to 28 U.S.C. § 158(d)(2)(A). Section 1233 of the BAPCPA confers jurisdiction on the Courts of Appeals in such circumstances, but grants them discretion to accept or decline the direct appeal. We now must decide whether to exercise our discretionary jurisdiction.

**ANALYSIS**

**I. 28 U.S.C. § 158(d)(2)(A)**

Section 1233 of the BAPCPA, see P.L. 109-8, 119 Stat. 23 (2005), amends 28 U.S.C. § 158(d) in pertinent part to provide that this court "shall have jurisdiction of appeals" from a bankruptcy court if the bankruptcy court certifies that either "(i) the judgment, order, or decree involves a question of law as

-3-

to which there is no controlling decision . . . or involves a matter of public importance; (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case." 28 U.S.C. § 158(d)(2)(A)(i)-(iii). This court may in its discretion exercise, or decline to exercise, that jurisdiction. 28 U.S.C. § 158(d)(2)(A) ("and if the court of appeals authorizes the direct appeal of the judgment, order, or decree") (emphasis added).

We find guidance for when we should exercise jurisdiction in the text of § 1233, the reasons why Congress passed the statute, and in jurisprudential considerations. The focus of the statute is explicit: on appeals that raise controlling questions of law, concern matters of public importance, and arise under circumstances where a prompt, determinative ruling might avoid needless litigation.

Legislative history confirms that Congress intended § 1233 to facilitate our provision of guidance on pure questions of law. Among the reasons for the direct appeal amendment was widespread unhappiness at the paucity of settled bankruptcy-law precedent.[1]

---

[1] For instance, one bankruptcy court apparently felt unconstrained even by the decisions of the district courts within its district. See In re Shattuc Cable Corp., 138 B.R. 557, 565 (Bankr. N.D. Ill. 1992) ("[I]t is not clear whether a bankruptcy court is bound by decisions of the district courts in that district."). This has long been a matter of concern to bankruptcy-law practitioners. Prior to passage of an earlier

The House Report that accompanied the BAPCPA emphasized that "decisions rendered by a district court as well as a bankruptcy appellate panel are generally not binding and lack stare decisis value." See H.R. Rep. No. 109-31, at 148 (2005); see also H.R. Rep. No. 107-3, Prt. 1, at 112 (2001) (same). Indeed, Congress believed direct appeal would be most appropriate where we are called upon to resolve a question of law not heavily dependent on the particular facts of a case, because such questions can often be decided based on an incomplete or ambiguous record. See H.R. Rep. No. 109-31, at 148-49 (noting that Congress did not expect that § 1233 would be used to facilitate direct appeal of "fact-intensive issues," but rather "anticipated that . . . [for such issues] district court judges or bankruptcy appellate panels" would suffice). When a discrete, controlling question of law is at stake, we may be able to settle the matter relatively promptly.

---

amendment to the bankruptcy code, Senator Howell Heflin noted the importance of "establish[ing] a dependable body of case law." 140 Cong. Rec. S14463 (daily ed. Oct. 6, 1994).

For a discussion of Congress's concern at the lack of bankruptcy precedent, see Paul M. Baisier & David G. Epstein, Resolving Still Unresolved Issues of Bankruptcy Law: A Fence or an Ambulance, 69 Am. Bankr. L.J. 525 (1995); Judith A. McKenna & Elizabeth C. Wiggins, Alternative Structures for Bankruptcy Appeals, 76 Am. Bankr. L.J. 625, 627 (2002) ("The bankruptcy appellate system is not well structured to produce binding precedent."); Long Range Plan for the Fed. Cts., Dec. 1995, Judicial Conference of the U.S., p. 47 (recommending changes to bankruptcy law to "foster coherent, consistent development of bankruptcy precedents").

Legislative history also confirms that direct appeal may be appropriate where a judgment of this court would "materially advance the progress of the case."[2]  For instance, where a bankruptcy court has made a ruling which, if correct, will essentially determine the result of future litigation, the parties adversely affected by the ruling might very well fold up their tents if convinced that the ruling has the approval of the court of appeals, but will not give up until that becomes clear. Where that ruling is manifestly correct or manifestly erroneous, the parties would profit from its immediate review in this court.

In parsing the text and legislative history of § 1233, we are also assisted by our prior analysis of other grants of "discretionary jurisdiction," both in Title 28, see 28 U.S.C. § 1292(b), and the Federal Rules of Civil Procedure, see Fed. R. Civ. P. 23(f).  For instance, § 1292(b) provides that this court may assume jurisdiction of an interlocutory appeal if the district court certifies that the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  As we have explained, Congress passed 28 U.S.C. § 1292(b) primarily to ensure that the courts of appeals would be

---

[2]   See McKenna & Wiggins, supra, at 635; Long Range Plan, supra, at 48 (discussing cases "when the stakes are sufficiently high").

able to "rule on . . . ephemeral question[s] of law that m[ight] disappear in the light of a complete and final record." Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 864 (2d Cir. 1996); see also id. at 865-66 (Congress passed § 1292(b) to "avoid protracted litigation") (citing Milbert v. Bison Labs., 260 F.2d 431, 433-35 (3d Cir. 1958) (discussing legislative history of § 1292(b))). Congress also sought to assure the prompt resolution of knotty legal problems. See Note, Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b), 88 Harv. L. Rev. 607, 609 (1975); see, e.g., Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 23-24 (2d Cir. 1990) (resolution of complicated legal questions, while perhaps not essential to litigation of particular case, might ease court congestion); Brown v. Bullock, 294 F.2d 415, 417 (2d Cir. 1961) (en banc); Gottesman v. Gen. Motors Corp., 268 F.2d 194, 197 (2d Cir. 1959); cf. Schlagenhauf v. Holder, 379 U.S. 104, 110-12 (1964) (use of mandamus proper to settle "new and important problems").[3] Similarly, Congress hoped that § 1233 would permit us to resolve controlling legal questions expeditiously and might foster the development of

---

[3] Congress did not intend 28 U.S.C. § 1292(b) to serve an error-correction function. See Note, Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b), supra, at 631 ("The statutory history of the Act plainly shows that . . . supervision . . . [is not] a proper justification for a section 1292(b) appeal.").

coherent bankruptcy-law precedent.[4]

Federal Rule of Civil Procedure 23(f) also permits us to exercise discretion in accepting an interlocutory appeal from a district court's decision to grant or deny class certification. We have pointed to several purposes underlying Rule 23(f) that are similar to those underlying § 1113. See generally In re Sumitomo Copper Litig., 262 F.3d 134 (2d Cir. 2001). First, it ensures that courts of appeals may review district court decisions that, although not "final" within the meaning of 28 U.S.C. § 1291, see Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978), overruling Eisen v. Carlisle & Jacquelin, 370 F.2d 119 (2d Cir. 1966), sound a "death-knell," see Sumitomo, 262 F.3d at 139 (permitting direct appeal if "the certification order will effectively terminate the litigation"); Blair v. Equifax Check Servs., Inc., 181 F.3d 832, 834 (7th Cir. 1999). Second, Rule 23(f) affords the courts of appeals an opportunity to intervene early to correct lower-court errors in class certification, which, if not corrected at that stage, would result in wasteful proceedings, often requiring re-litigation. See Sumitomo, 262

---

[4] Unlike § 1292(b), § 1233 expressly provides that the lower court may certify that a decision is susceptible of direct appeal solely because there is no governing legal precedent. Cf. Flor v. Bot Fin. Corp., 79 F.3d 281, 284 (2d Cir. 1996) (per curiam); Williston v. Eggleston, 410 F. Supp. 2d 274, 277 (S.D.N.Y. 2006) ("Simply because a question of law has not been authoritatively addressed . . . does not make the question grounds for a substantial difference of opinion [under 28 U.S.C. § 1292(b)].").

F.3d at 139 (permitting direct appeal if "the certification order implicates a legal question about which there is a compelling need for immediate resolution"); see also In re Lorazepam & Clorazepate Antitrust Litig., 289 F.3d 98, 105 (D.C. Cir. 2002) (concluding that "[w]here a district court class certification decision is manifestly erroneous . . . that error . . . should not entirely be ignored"); Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 144 (4th Cir. 2001) ("[r]ecognizing that Rule 23(f) was explicitly promulgated to replace the use of mandamus in reviewing manifestly erroneous class certifications"); Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 164 (3d Cir. 2001).[5]  Like our construction of § 1292(b), our discussion in the Rule 23(f) context of the need to correct errors that sound a "death-knell" is relevant here.

Nevertheless, although Congress emphasized the importance of our expeditious resolution of bankruptcy cases, it did not wish us to privilege speed over other goals; indeed, speed is not necessarily compatible with our ultimate objective -- answering questions wisely and well.  In many cases involving unsettled areas of bankruptcy law, review by the district court would be

---

[5]  Although some circuit courts have suggested that Rule 23(f) may also serve a precedent-creation function, we disagree. Compare Equifax, 181 F.3d at 835, with Sumitomo, 262 F.3d at 140 (permitting direct appeal to review a "novel legal question" only if it is "likely to escape effective review after entry of final judgment").

most helpful. Courts of appeals benefit immensely from reviewing the efforts of the district court to resolve such questions. Permitting direct appeal too readily might impede the development of a coherent body of bankruptcy case-law. See Ohio v. Roberts, 448 U.S. 56, 64 (1980) (explaining that "the common-law tradition" is a "process [that is] gradual, building on past decisions, drawing on new experience, and responding to changing conditions"), abrogated on other grounds by Crawford v. Washington, 541 U.S. 36 (2004); Benjamin N. Cardozo, The Nature of the Judicial Process 24 (1921) (explaining that the common law process "goes on inch by inch"). Moreover, since district courts tend to resolve bankruptcy appeals faster than the courts of appeals, see Judith A. McKenna & Elizabeth C. Wiggins, Alternative Structures for Bankruptcy Appeals, 76 Am. Bankr. L.J. 625, 629 (2002) ("District courts are, on the whole, faster at deciding bankruptcy appeals than are the courts of appeals."); Long Range Plan for the Fed. Cts., Dec. 1995, Judicial Conference of the U.S., at 47-48 (same), and because this court has relaxed the meaning of "finality" in bankruptcy cases, see, e.g., Flor, 79 F.3d at 283 ("[T]he concept of 'finality' is more flexible in the bankruptcy context than in ordinary civil litigation."), the cost in speed of permitting district court review will likely be small.

We believe that Congress was aware of the dangers of

leapfrogging the district court in the appeals process. Initially divided over whether to make direct appeals mandatory in certain circumstances, or to grant discretion to the courts of appeals to accept or decline such direct appeals, Congress wisely adopted the latter path, probably in recognition of the salutary effects of allowing some cases to percolate through the normal channels. See H.R. Rep. No. 107-617, at 297 (2002) ("Section 1233 reflects a compromise between the House and Senate conferees. The House provision [would have] . . . deem[ed] a judgment, decision, order, or decree of a bankruptcy judge to be a judgment, decision, order, or decree of the district court entered 31 days after an appeal . . . [wa]s filed with the district court."); see also Randolph J. Haines & William L. Norton III, Norton Bankruptcy Reform Act Newsletter: Bankruptcy Reform Legislation of 2001, Summary of the Bankruptcy Reform Act of 2001, 2001 WL 533346, at *18-19 (2001).

We must also bear in mind that in most cases, even without certification, the parties will have an opportunity to appeal both to the district court and to this court before the termination of the entire bankruptcy proceeding, thereby satisfying many of the objectives here that also underlie § 1292(b) and Rule 23(f). Moreover, Congress has explicitly granted us plenary authority to grant or deny leave to file a direct appeal, notwithstanding the presence of one, two, or all

-11-

three of the threshold conditions, see H.R. Rep. No. 109-31, at 148 ("Jurisdiction for the direct appeal would exist in the circuit court of appeals only if the court of appeals authorizes the direct appeal."); cf. Koehler, 101 F.3d at 866.

With the statute's text and history as well as these jurisprudential considerations in mind, and recognizing that broad varieties of cases may be eligible for direct appeal, we will be most likely to exercise our discretion to permit a direct appeal where there is uncertainty in the bankruptcy courts (either due to the absence of a controlling legal decision or because conflicting decisions have created confusion) or where we find it patently obvious that the bankruptcy court's decision is either manifestly correct or incorrect, as in such cases we benefit less from the case's prior consideration in the district court and we are more likely to render a decision expeditiously, thereby advancing the progress of the case. On the other hand, we will be reluctant to accept cases for direct appeal when we think that percolation through the district court would cast more light on the issue and facilitate a wise and well-informed decision. Bearing the foregoing guidance in mind, some of it dicta to be sure, future panels remain free to authorize a direct appeal if they believe it would be consonant with Congress's goals in passing § 1233 to do so.

**II. Application of the 28 U.S.C. § 158(d)(2)(A) Standard**

While it was not improper for the bankruptcy court to permit the parties to request leave to file a direct appeal and to certify the appeal, we decline to exercise our discretion to hear this appeal. We do not perceive a conflict of such a nature that creates uncertainty in the bankruptcy courts, as all three of the courts within this circuit to have considered the question have held that New York's homestead exemption applies retroactively. See Certification at 2 n.1; cf. In re Pappas, 207 B.R. 379, 381-82 (2d Cir. BAP 1997) (discussing disputed question of bankruptcy law suitable for interlocutory review). There is no showing, furthermore, that evaluation of the bankruptcy court's decision at this time would lead to a more rapid resolution of the case, in part because the decision does not appear to be either manifestly correct or manifestly incorrect. The 2005 amendment to the C.P.L.R. is plausibly remedial within the meaning of McKinney's Statutes § 54. See In re Little, No. 05-68281, at *21-22. Moreover, it is unlikely that the retroactive application of New York's homestead exemption would violate the Contracts Clause. Cf. In re Seltzer, 104 F.3d 234, 235-37 (9th Cir. 1996) (holding that the retroactive application of a Nevada exemption did not violate the Contracts Clause).

In sum, we think that prior consideration by the district court would be beneficial and there is no compelling reason for this court to address the issue in the first instance.

## CONCLUSION

For the reasons set forth above, we DENY the motion for leave to take a direct appeal and remand the case to the bankruptcy court for further proceedings consistent with this opinion.