07-4369-bk
In re: CFCU Community Credit Union

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

—————

August Term, 2008

(Argued: September 24, 2008                    Decided: January 9, 2009)

Docket No. 07-4369-bk

—————

CFCU COMMUNITY CREDIT UNION,

*Appellant,*

—v.—

JERALD JOHN HAYWARD, II, LOIS EVELYN HAYWARD,

*Appellees,*

STATE OF NEW YORK, OFFICE OF THE ATTORNEY GENERAL,

*Intervenor,*

PETER SCRIBNER,

*Trustee.*

—————

Before:

WESLEY, HALL, and GIBSON, *Circuit Judges*.[1]

---

[1] The Honorable John R. Gibson, United States Court of Appeals for the Eighth Circuit, sitting by designation.

Appeal from a judgment of the United States District Court for the Western District of New York (Siragusa, *J.*), entered on September 19, 2007, affirming an order of the Bankruptcy Court (Ninfo, *J.*), entered on May 25, 2006, holding that the 2005 amendment to N.Y. C.P.L.R. 5206, increasing New York's homestead exemption from $10,000 to $50,000, applied to debts contracted prior to the effective date of the amendment.

---

EDWARD Y. CROSSMORE, The Crossmore Law Office, Ithaca, NY *for Appellant.*

JEFF COLEMAN, Ithaca, NY *for Appellees.*

OWEN DEMUTH, Assistant Solicitor General, (Barbara D. Underwood, Solicitor General, Andrew D. Bing, Deputy Solicitor General), *for* Andrew M. Cuomo, Attorney General of the State of New York.

---

WESLEY, *Circuit Judge*:

In August 2005, the New York State Legislature amended N.Y. C.P.L.R. 5206 to increase the state's homestead exemption from $10,000 to $50,000. *See* 2005 N.Y. Laws Ch. 623. In addition to exempting a judgment debtor's home "from application to the satisfaction of a money judgment," N.Y. C.P.L.R. 5206(a), New York debtors are entitled to claim this exemption in bankruptcy proceedings. *See* N.Y. Debt. & Cred. Law § 282; *see also* 11 U.S.C. § 522(b)(3)(A). This appeal requires us to determine whether the 2005 Amendment's increased homestead exemption amount applies retroactively to debts incurred prior to the Amendment's effective date. We hold that it does. Neither the statutory language nor its legislative history requires limiting the scope of the Amendment to debts incurred after the Amendment's effective date. The Contract Clause of the Constitution is likewise not offended by a retroactive application of the Amendment to pre-existing debts. Accordingly, New York debtors who file a bankruptcy

2

petition after the Amendment's effective date are entitled to invoke the greater homestead exemption amount of $50,000.

**FACTS**

On October 14, 2005, Jerald John Hayward, II and Lois Evelyn Hayward (collectively, "Debtors") filed a Chapter 7 bankruptcy petition. Debtors alleged that (1) Jerald owned real property with a market value of $95,294 encumbered by a $49,775.98 mortgage; (2) the property was exempt under N.Y. C.P.L.R. 5206; and (3) Appellant CFCU Community Credit Union ("CFCU") held a claim for $11,291.63 (a May 2003 car loan), secured by an automobile valued at $7,185, leaving CFCU a general unsecured creditor for the balance ($4,106.63).

CFCU objected to the homestead exemption to the extent it exceeded the pre-2005 Amendment amount. CFCU argued that (1) the 2005 Amendment does not specifically provide that it applies to obligations or debts incurred prior to August 30, 2005 – the effective date of the Amendment; (2) in the absence of such a provision, the 2005 Amendment does not apply retroactively to any obligation or debt incurred prior to that date; and (3) even if the 2005 Amendment applied to pre-August 30, 2005 debts, that construction would impair the contract between Debtors and CFCU, thus violating the Contract Clause of the United States Constitution. *See* U.S. Const. art. I, § 10, cl. 1. In opposition, Debtors contended that the State Legislature clearly intended the $50,000 homestead exemption to apply because the law specifically provided that it "shall take effect immediately." 2005 N.Y. Laws Ch. 623, § 2. Debtors also argued that, under 11 U.S.C. § 522(b)(3)(A), they may exempt "any property that is exempt under . . . State or local law that is applicable on the date of the filing of the petition . . . ." Thus, because their petition was filed on October 14, 2005, after the effective date of the Amendment, the increased

3

exemption amount applies.

The bankruptcy court (Ninfo, *J.*) denied CFCU's motion, holding that Debtors were entitled to the $50,000 exemption even though they incurred their CFCU debt prior to the 2005 Amendment. *See In re Hayward*, 343 B.R. 41, 47 (Bankr. W.D.N.Y. 2006). The court principally relied on, and adopted the reasoning of, *In re Little*, No. 05-68281, 2006 WL 1524594, at *12-13 (Bankr. N.D.N.Y. Apr. 24, 2006), which held that the Amendment was remedial and therefore should be applied retroactively, and that retroactive application did not violate the Contract Clause. Discussing the remedial nature of the Amendment, Judge Ninfo concluded that the "mischief" and "imperfection" the Legislature sought to remedy was a homestead exemption not indexed for inflation that had become "tantamount to having no exemption at all." *Hayward*, 343 B.R. at 45 (quoting N.Y. Spons. Memo., 2005 S.B. S4582). The remedy was to adjust the exemption to "make it realistic in today's economy." *Id.* at 46 (quoting N.Y. Spons. Memo., 2005 S.B. S4582).

The court concluded that limiting the reach of the law to prospective application only would "defeat the clearly evident intention of the New York State Legislature." *Id.* The court also noted that CFCU had not reduced the Haywards' debt to judgment before August 30, 2005. The court concluded that such "creditors do not have the kind of vested rights that require a detailed constitutional analysis beyond that set forth in *Little*." *Id.* The court concluded that "the Trustee-in-bankruptcy, who represents all the general unsecured creditors and is the 'perfect lien creditor' under Section 544," would only be vested with rights that "came into existence when the debtors filed their bankruptcy petitions after August 30, 2005, the date when the [Amendment] became immediately and retroactively effective." *Id.* at 46-47. The district court

4

(Siragusa, *J.*) affirmed upon "the opinion of the court below." *CFCU Cmty. Credit Union v. Hayward*, No. 06-CV-6290, 2007 WL 4232721, at *3 (W.D.N.Y. Sept. 11, 2007).

On appeal to this Court, CFCU reiterates its challenge to the retroactive application of the 2005 Amendment as it relates to pre-existing debts, arguing that (1) neither the language of the Amendment nor its legislative history manifest a clear intent that the statute apply retroactively to pre-Amendment debts, and (2) retroactive application violates the Contract Clause. Debtors counter that we should employ the exemption in effect at the time of the filing of their petition because 11 U.S.C. § 522(b)(3)(A) provides that the "State or local law that is applicable on the date of the filing of the petition" governs the available state bankruptcy exemptions. New York's Attorney General has intervened pursuant to 28 U.S.C. § 2403(b) in support of the statute.[2] While agreeing with Debtors that they should have the benefit of the increased exemption, the Attorney General rejects their reasoning and instead urges us to adopt the rationale articulated by the courts below – the 2005 Amendment is remedial and therefore applies to debts incurred prior to its effective date. For the reasons set forth below, we affirm the order of the district court.

**DISCUSSION**

**I.      The State Law Question: Interpreting the Scope of the 2005 Amendment**

     **A.      Governing Bankruptcy Code Provisions and New York's Homestead Exemption**[3]

---

[2] On February 4, 2008, we granted the State Attorney General's motion to submit a brief as an intervenor.

[3] "An order of a district court functioning in its capacity as an appellate court in a bankruptcy case is subject to plenary review." *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2d Cir. 1999). This Court "independently review[s] the factual determinations and legal conclusions of the bankruptcy court." *Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Manufacturing Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) (internal citation and

5

Pursuant to 11 U.S.C. § 522(b), debtors may exempt certain property from the bankruptcy estate created by the petition, "allowing them to retain those assets rather than divide them among their creditors." *Rousey v. Jacoway*, 544 U.S. 320, 322 (2005); *see also Bell v. Bell (In re Bell)*, 225 F.3d 203, 208 (2d Cir. 2000). New York has "opted out" of the federal exemption scheme set forth in § 522(d), choosing instead to provide its own exclusive set of permissible exemptions for debtors domiciled in the state. *See* 11 U.S.C. § 522(b)(1); *Dubroff v. First Nat'l Bank of Glens Falls (In re Dubroff)*, 119 F.3d 75, 76-77 (2d Cir. 1997); *In re Nudo*, 147 B.R. 68, 70 (Bankr. N.D.N.Y. 1992). Debtors may exempt "any property that is exempt under . . . State or local law that is applicable on the date of the filing of the petition …" 11 U.S.C. § 522(b)(3)(A).[4] Thus, while federal law governs the date on which the exemption comes into play, New York law governs the nature and scope of the exemption.

New York's exemptions are set forth in Debtor & Creditor Law § 282. *See In re Onyan,* 163 B.R. 21, 24-25 (Bankr. N.D.N.Y. 1993). That statute explicitly incorporates N.Y. C.P.L.R. 5206, New York's homestead exemption. *See* N.Y. Debt & Cred. Law § 282. N.Y. C.P.L.R. 5206 exempts several categories of property as long as the property in question is "owned and occupied as a principal residence." The statute protects the residence from the satisfaction of money judgments up to "fifty thousand dollars in value above liens and encumbrances . . . unless

quotations marks omitted). "The bankruptcy court's legal conclusions are evaluated *de novo*; its findings of fact are subject to a clearly erroneous standard." *Id.* (internal citation omitted). The issues raised by CFCU in this appeal are pure legal questions subject to *de novo* review by this Court.

[4] This provision was previously codified at 11 U.S.C. § 522(b)(2), but changed as a result of the Bankruptcy Abuse Prevention & Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23.

6

the judgment was recovered wholly for the purchase price" of the residence. N.Y. C.P.L.R. 5206(a).

Debtors contend that 11 U.S.C. § 522(b)(3)(A) requires that all bankruptcy petitions filed in New York after the Amendment's enactment date employ the increased homestead exemption. One New York bankruptcy court has adopted this view. *See Rupp v. Elmasri (In re Elmasri)*, 369 B.R. 96, 104 (Bankr. E.D.N.Y. 2007).[5] It is true, as Judge Ninfo noted, that the trustee-in-bankruptcy is the "perfect lien creditor" under Section 544 of the Bankruptcy Code on the date Debtors filed their bankruptcy petition. *Hayward*, 343 B.R. at 46. Thus, one might conclude from Section 544 that the filing date of the petition defines the rights of unsecured creditors; indeed it does. But the inquiry here is not merely the rights of the unsecured creditors, but also the breadth of the exemption's protection of a debtors' property in New York. Section 522(b)(3)(A) specifically notes that exemptions under the statute are limited to "any property that is exempt under . . . State or local law that is *applicable* on the date of the filing of the petition . . ." (emphasis added). If, under New York law, the increased exemption does not apply to contract debts incurred before the effective date of the increase, then pre-enactment contract creditors have the benefit of the lower exemption level while post-enactment contract creditors face the higher exemption. In both cases, their claims against the estate are governed by the trustee's "perfect lien," but are limited by the scope of the exemption as defined by New York law.

---

[5] Other bankruptcy courts have similarly adopted the view that the exemption amount in effect on the date the petition was filed applies regardless of whether the state intended the statute to apply to pre-existing debts. *See, e.g., In re Evans*, 362 B.R. 275, 280 (Bankr. D. S.C. 2006); *Matter of Skjente*, 213 B.R. 274, 275 (Bankr. D. Vt. 1997); *Bartlett v. Giguere (In re Bartlett)*, 168 B.R. 488, 494 (Bankr. D. N.H. 1994).

Debtors also argue that *Owen v. Owen*, 500 U.S. 305 (1991) applies here and requires that federal, not New York, law governs the applicability of the increased homestead exemption amount. In *Owen*, the Supreme Court interpreted a different Bankruptcy Code provision – 11 U.S.C. § 522(f), the lien avoidance provision – which, at that time, provided that "[n]otwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under [§ 522(b)], if such lien is – (1) a judicial lien; or (2) a nonpossessory, nonpurchase-money security interest . . . ." *Owen*, 500 U.S. at 309 (quoting 11 U.S.C. § 522(f) (1990) (internal quotation marks omitted)). Although Florida law excluded certain property from the scope of its homestead act (i.e., property subject to a pre-existing judgment lien), the Supreme Court held that the debtor was nevertheless permitted to avoid the pre-existing lien that impaired his homestead exemption under § 522(f). *See Owen*, 500 U.S. at 312-14. *Owen*, however, does not *require* application of the increased homestead exemption in this case, where Debtors seek to exempt property from the reach of creditors pursuant to a state-created exemption without regard to whether New York intended the Amendment to apply to debts contracted before its enactment. "If a State opts out [of the federal exemption scheme], then its debtors are limited to the exemptions provided by state law. Nothing in subsection (b) (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all." *Id.* at 308. *Owen* holds no sway here. This case requires that we decide the scope of the homestead exemption – the set of debts subject to the reach of the Amendment. Clearly, this is a matter of New York law.

**B.      New York Homestead Exemption Background**

New York law has provided a homestead exemption since 1850.  *See* Homestead Act of 1850, ch. 260 (1850) N.Y. Laws 499 (replaced by the Code of Civil Procedure 1876); *John T. Mather Mem'l Hosp., Inc. v. Pearl*, 723 F.2d 193, 194 (2d Cir. 1983); *In re Feiss*, 15 B.R. 825, 826 (Bankr. E.D.N.Y. 1981).[6]  Not surprisingly, the purpose of the homestead exemption is "to protect a homeowner against seizure of his or her dwelling to satisfy a money judgment." *GE Capital Bus. Asset Funding Corp. v. Hakakian*, 300 A.D.2d 486, 487 (2d Dep't 2002).  Courts have long recognized the strong policy considerations underlying New York's exemption statute:

> The statute is founded upon considerations of public policy, and has introduced a new rule in regard to the extent of property which shall be liable for a man's debts.  The legislature were of opinion, looking to the advantages belonging to the family state in the preservation of morals, the education of children, and possibly even, in the encouragement of hope in unfortunate debtors, that this degree of exemption would promote the public welfare, and perhaps in the end, benefit the creditor.

*Robinson v. Wiley*, 15 N.Y. 489, 494 (1857) (Opn. of Johnson, *J.*).  The homestead exemption "reflect[s] a legislative policy, both state and federal, to provide an honest debtor with a fresh start," and was "drafted with the understanding that justice is not served by leaving the debtor and his family homeless and on the brink of financial ruin." *Westinghouse Credit Corp. v. Central Trust Co. (In re Leonardo)*, 11 B.R. 453, 455 (Bankr. W.D.N.Y. 1981); *see also In re Miller*, 103 B.R. 65, 67 (Bankr. N.D.N.Y. 1989); *In re Pearlman*, 54 B.R. 455, 457 (Bankr. S.D.N.Y. 1985).

---

[6] New York's first Homestead Act "provided that a lot of land with one or more buildings thereon not exceeding $1000 in value owned and occupied as a residence by a 'householder having a family' could be exempted from an execution by recording a designation so specifying in the appropriate County Clerk's office." *In re Feiss*, 15 B.R. at 826 (internal citation omitted); *see generally Robinson v. Wiley*, 15 N.Y. 489 (1857).

Since the homestead statute was incorporated into the N.Y. C.P.L.R. in 1962 it has been amended several times to increase the exemption. *See* 1962 N.Y. Laws Ch. 308. In 1969, the Legislature increased the exemption from $1,000 to $2,000. *See* 1969 N.Y. Laws Ch. 961; *see also Roosevelt Hardware v. Green*, 72 A.D.2d 261, 267 (2d Dep't 1980). That amendment did not indicate if the statute applied to debts contracted prior to its effective date.[7]

Prior to the enactment of the 2005 Amendment, the last time the State Legislature increased the homestead exemption was in 1977. In addition to raising the homestead exemption amount from $2,000 to $10,000, the 1977 amendments "modernized" the statute "by specifying three distinct and enumerated types of property which qualify for the exemption . . . and by deleting the provisions requiring a judgment debtor to file a notice or conveyance with the county clerk in order to claim the exemption." *Wyoming County Bank & Trust Co. v. Kiley*, 75 A.D.2d 477, 479 (4th Dep't 1980). The 1977 legislation also explicitly directed that the "act shall take effect ninety days after it shall have become a law, but shall not affect the application of property to the satisfaction of a money judgment *for a debt contracted before it takes effect*." 1977 N.Y. Laws Ch. 181, § 2 (emphasis added). Thus, under the plain language of the amendment, the increased homestead exemption did not impact judgment creditors who sought to enforce a money judgment for debts contracted prior to the amendment's effective date regardless of when they converted the debt to a judgment. A number of bankruptcy court decisions have noted that the exemption under the 1977 Amendment was not available for contract debts incurred prior to the Amendment's effective date. *See In re Buchardt*, 114 B.R. 362, 365 (Bankr. N.D.N.Y. 1990); *In*

---

[7] The amendment took effect on January 1, 1970. *See* 1969 N.Y. Laws Ch. 961, § 2.

*re Ventura*, 65 B.R. 29, 30 (Bankr. N.D.N.Y. 1986); *In re Henninger*, 53 B.R. 60, 61 (Bankr. W.D.N.Y. 1985).

**C.      The 2005 Amendment to the Homestead Exemption**

The 2005 Amendment does not contain language addressing whether the new exemption amount should be applied to debts contracted prior to the Amendment's enactment date.  Instead, the Amendment merely directs that "[t]his act shall take effect immediately."  2005 N.Y. Laws Ch. 623, § 2.  A statute's command that it take effect "immediately" does not resolve the question of whether, under New York law, the amendment should be applied retroactively to pre-existing debts.  *See Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 583 (1998).  In *Majewski*, the New York Court of Appeals observed that "the date that legislation is to take effect is a separate question from whether the statute should apply to claims and rights then in existence."  *Id*.  The *Majewski* court further concluded that "[w]hile the fact that a statute is to take effect immediately evinces a sense of urgency, the meaning of the phrase is equivocal in an analysis of retroactivity."  *Id.* (internal citations and quotation marks omitted).  Thus, the court concluded that "the proviso that the subject provisions were to 'take effect immediately' contribut[ed] little to our understanding of whether retroactive application was intended on the issue presented."  *Id.* at 583-584.[8]   Thus, the language of the 2005 Amendment is inconclusive on the retroactivity question presented here.

**D.      Retroactive or Prospective?**

It should come as no surprise that "retroactive operation is not favored by [New York]

---

[8] The district court in *Little*, upon which the courts below heavily relied, interpreted this as a clear indication that the Legislature intended the 2005 Amendment to be remedial and thus applied retroactively.  *Little*, 2007 WL 2791122, at *3.  That view is inconsistent with *Majewski*.

courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it." *Majewski*, 91 N.Y.2d at 584. As Judge Cardozo once opined, "[i]t takes a clear expression of the legislative purpose to justify a retroactive application." *Jacobus v Colgate*, 217 N.Y. 235, 240 (1916). "Generally, an amendment will have prospective application only, and will have no retroactive effect unless the language of the statute clearly indicates that it shall receive a contrary interpretation." N.Y. Stat. Law § 52. Indeed, the Supreme Court has recognized that "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994).

Remedial legislation, however, "should be applied retroactively." *Majewski*, 91 N.Y.2d at 584. "Remedial statutes constitute an exception to the general rule that statutes are not to be given a retroactive operation, but only to the extent that they do not impair vested rights." N.Y. Stat. Law § 54.[9] However, the mere classification of "a statute as 'remedial' does not automatically overcome the strong presumption" that statutes should be applied prospectively, "since the term may broadly encompass any attempt to 'supply some defect or abridge some superfluity in the former law.'" *Majewski*, 91 N.Y.2d at 584 (quoting N.Y. Stat. Law § 321). To determine whether a statute should be applied retroactively, courts must look at legislative history to see if it "reveals that the purpose of new legislation is to clarify what the law was always meant

[9] It is important to note that CFCU does not claim that it obtained a vested interest – a property interest – in Debtors' home prior to the Amendment's enactment. While CFCU has a security interest in Debtors' car it has not reduced the amount due on the loan to a judgment and filed the judgment in the county in which debtors reside. *See* N.Y. C.P.L.R. 5203(a). Thus, CFCU's only claim here is that the Amendment does not apply to their contract based claim solely because the contract was executed prior to the Amendment's effective date.

to say and do." *Id.* at 585. Simply put, there must be a "clear" expression of legislative intent to apply a statute retroactively. *Id.* at 589.

New York's Court of Appeals has cautioned, however, that while the "maxims of statutory construction" described above "provide helpful guideposts, the reach of the statute ultimately becomes a matter of judgment made upon review of the legislative goal." *Duell v. Condon*, 84 N.Y.2d 773, 783 (1995). "Other factors in the retroactivity analysis include whether the Legislature has made a specific pronouncement about retroactive effect or conveyed a sense of urgency; whether the statute was designed to rewrite an unintended judicial interpretation; and whether the enactment itself reaffirms a legislative judgment about what the law in question should be." *In re Gleason (Michael Vee, Ltd.)*, 96 N.Y.2d 117, 122 (2001).

## E. Legislative Intent

There are several key legislative documents which shed light on the statute's purpose. The memoranda submitted by the Amendment's sponsors in the Senate and Assembly are helpful in that regard. In New York, while not determinative, a legislator's sponsor memo submitted contemporaneously with the legislation "is entitled to considerable weight in discerning legislative intent." *Vatore v. Comm'r of Consumer Affairs*, 83 N.Y.2d 645, 651 (1994) (quoting *Matter of Knight-Ridder Broad. v. Greenberg*, 70 N.Y.2d 151, 158 (1987)). Each memo contains the following justification for the 2005 Amendment:

> The idea of the homestead exemption to civil judgments seems to have been that no civil judgment against any person should result in that person forfeiting his or her having a right to a place to live. To that end, Chapter 181 of the Laws of 1977 made the value of a person's homestead up to $10,000 exempt from civil judgments against that person.
>
> Later on, Section 282 of the Debtor and Creditor Law extended this exemption to

13

assessments of the value of a person's estate when Bankruptcy is declared. When laws mention specific dollar amounts, it is prudent to periodically review and update those amounts.

Current law sets the homestead exemptions at $10,000. That amount was set when the exemption was first enacted in 1977, and has not been updated since. In 1998, the value of that amount of money had declined to about $3570 in 1977 dollars.

This bill proposes to increase the homestead exemption to $50,000, a much more realistic figure. The current amount, which is 22 years old, is not at all realistic in today's economy. To have the figure so low is tantamount to having no exemption at all.

N.Y. Spons. Memo., 2005 S.B. S4582; N.Y. Spons. Memo., 2005 A.B. A8479. The Assembly

memo additionally noted, "[t]his bill will help to provide some relief from the stringent

bankruptcy laws recently passed by Congress." N.Y. Spons. Memo., 2005 A.B. A8479.

This legislative history clearly reflects an intent on the part of the Legislature to adjust the

homestead exemption to account for inflation and to bring it in line with current economic

conditions. The law's sponsors specifically noted that the $10,000 amount had not been updated

since 1977 and was "not at all realistic in today's economy." N.Y. Spons. Memo., 2005 S.B.

S4582; N.Y. Spons. Memo., 2005 A.B. A8479. The sponsors further explained that "[t]o have the

figure so low is tantamount to having no exemption at all." *Id.* Viewing the $10,000 exemption

as insufficient, the Legislature increased the dollar value to a level that furthers the policy of

reducing the number of debtors who lose their homes as a result of bankruptcy or a civil

judgment, a longstanding goal of the homestead exemption in New York. *See, e.g., Leonardo*, 11

B.R. at 455.

Based on the absence of language barring the application of the Amendment to pre-

enactment debts, and the legislative intent to provide for an immediate increased exemption, we

14

cannot infer that the Legislature intended the Amendment to apply only prospectively. CFCU points to nothing in the statute or legislative history that would require limiting the scope of the Amendment in such a fashion. Unlike the language of the 1977 Amendment, *see Perry v. Zarcone*, 77 A.D.2d 881 (2d Dep't 1980), *appeal dismissed* 52 N.Y.2d 701, the 2005 Amendment does not address the issue of whether the statute applies to pre-Amendment debts. In discussing the 1977 Amendment, the *Perry* court concluded that a judgment debtor was not entitled to the increased homestead exemption because the State Legislature "intended that the increase be prospective only, i.e., to apply only when the debt upon which execution is sought arose after the effective date of the amendment." *Id.* at 881.[10] The court referred to two executive memoranda concerning the 1977 Amendment. The court noted that the first memorandum was a statement in support of the bill from the State Executive Department, which indicated that: "The [proposed] law would not apply to debts that exist before it takes effect. Therefore, existing creditors will not have their security diminished by the amendment." *Id.* at 881 (alterations in original) (internal quotation marks omitted). The court additionally noted that a "statement of the Governor on approving the bill" stated "existing creditors will not have their security diminished by the amendment." *Id.* at 882 (internal quotation marks omitted).[11]

No such legislative history exists here. In this case, the Legislature's decision not to

---

[10] Although the creditor in *Perry* obtained a judgment prior to the 1977 Amendment's effective date, *see* 77 A.D.2d at 882, that fact was not determinative. The pre-1977 exemption applied because the *debt* upon which the judgment was entered was incurred *prior* to the Amendment's effective date. *See id*. at 881.

[11] The New York Court of Appeals noted in *Majewski*, however, that "[a]lthough postenactment statements of the Governor may be examined in an analysis of legislative intent and statutory purpose," they must be viewed with caution. *See* 91 N.Y.2d at 586.

15

include something akin to the anti-retroactivity provision of the 1977 Amendment in the 2005 Amendment suggests an intent to apply the law to pre-enactment contract debts. Legislative concern with pre-existing debts expressed in the 1977 Amendment is simply not present in the 2005 legislation. Rather, the Legislature explicitly commanded that it was to take effect "immediately." 2005 N.Y. Laws Ch. 623, § 2. Although such a directive alone does not mandate retroactive application, *see Majewski,* 91 N.Y.2d at 583, it certainly evinces "a sense of urgency" that the statute's intended beneficiaries – including debtors subject to contract-based debts who file a bankruptcy petition after August 30, 2005 – be given the benefit of an increased homestead exemption. *See Gleason*, 96 N.Y.2d at 122 (noting that the Legislature conveyed "a sense of immediacy," by, among other things, "direct[ing] that the amendment was to take effect immediately").

We also agree with New York's Attorney General that the 2005 Amendment is remedial in nature. *See, e.g.*, *Macumber v. Shafer*, 637 P.2d 645, 646 (Wash. 1981) (retroactively applying an amendment to the Washington state homestead exemption increasing the exemption amount to unsecured debts incurred prior to the amendment "[i]n order to further the purpose of the homestead legislation in general, and to give effect to the amendment increasing the dollar amount of the exemption in particular."). The 2005 Amendment's clear objective was to update the statute to reflect current economic conditions and to once again protect debtors from losing their homes – a goal more likely to be advanced with a $50,000 exemption amount.[12] Moreover, several bankruptcy courts, including the court below here, have observed that applying an

---

[12] We reiterate that we are only asked to determine if contract-based debts that have not been reduced to judgment prior to the effective date of the Amendment are subject to the increased exemption amount.

16

increased homestead exemption only to debts incurred post-enactment would not adequately advance the ameliorative purpose of the exemption.  *See Hayward*, 343 B.R. at 46; *Evans*, 362 B.R. at 281.  If we adopted CFCU's interpretation, the policy goal underlying the increased homestead exemption would not be fully realized for bankruptcy debtors, like Debtors here, who filed shortly after August 2005 but are burdened by pre-August 2005 debts.  Indeed, under such a reading, the relief the Legislature sought to provide "immediately" would be a long time in coming.

In addition, the State Legislature's action on the homestead exemption increase appears to have been partly precipitated by Congress's passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  The Assembly sponsor memo explicitly provided that the Amendment "will help to provide some relief from the stringent bankruptcy laws recently passed by Congress."  N.Y. Spons. Memo., 2005 A.B. A8479.  If, however, we concluded that the old exemption amount applied – the legislative sponsors believed that amount was "tantamount to having no exemption at all," *id.*; N.Y. Spons. Memo., 2005 S.B. S4582 – no additional relief would be accorded to New York debtors, thus contravening the Amendment's purpose.

In light of the legislative finding that the increased exemption amount was long overdue and that the old amount was unrealistic in today's economy, it would defeat the intent of the Legislature to judicially engraft an anti-retroactivity provision (similar to that found in the 1977 Amendment) onto the statute where none exists.  It is well settled that "[t]he Legislature is presumed to be aware of the law in existence at the time of an enactment."  *Matter of Amorosi v. S. Colonie Ind. Cent. Sch. Dist.*, 9 N.Y.3d 367, 373 (2007) (quoting *B & F Bldg. Corp. v. Liebig*, 76 N.Y.2d 689, 693 (1990)).  If the Legislature intended the Amendment to be prospective only

17

(i.e., not to apply to pre-existing debts) it could easily have carried over the language from the 1977 Amendment. It chose not to do so. Thus, a New York debtor's ability to invoke the increased homestead exemption is determined not by the date the debtor's unsecured contract debt was incurred, but rather, by the date upon which the debtor files his or her bankruptcy petition.

### F. Certification

Before we depart from our state law analysis, we take a moment to explain why we decline to exercise our discretionary authority to certify the state law issue to the New York Court of Appeals. Although neither the parties nor the Attorney General as an intervenor advocated certification, we may certify a question where "an unsettled and significant question of state law . . . will control the outcome of a case pending before this Court." Second Cir. Local R. § 0.27; *see* 22 N.Y.C.R.R. § 500.27. Certification may be appropriate "if with respect to the question asked . . . there is a statute implicated [and] its plain language does not answer the question." *City of N.Y. v. Smokes-Spirits.Com, Inc.*, 541 F.3d 425, 456 (2d Cir. 2008) (internal quotations and citations omitted) (alteration in original). If, however, an open issue of state law is not necessarily determinative of the outcome, certification is unwarranted. *See Galdamez v. Keane*, 394 F.3d 68, 76 n.5 (2d Cir. 2005). As we have previously noted, certification is not necessarily required "whenever (a) a plaintiff raises a federal constitutional challenge to state law in federal court, (b) the state's highest court has not interpreted the statute, and (c) the constitutional question could conceivably be avoided by some saving interpretation." *Tunick v. Safir*, 209 F.3d 67, 73-74 (2d Cir. 2000).

We would note that the large majority of cases dealing with the homestead exemption have been litigated in bankruptcy court. Perhaps the issue does not present itself often outside of

18

the context of a bankruptcy proceeding. In any event, the question of whether the 2005 Amendment applies to pre-existing debts is easily resolved using well-established principles of New York law that counsel courts in the task of determining the reach of a statute. However, the reach of the statute is but half the task. Once we have concluded that the statute affects pre-existing debts, we must then determine if it runs afoul of the Contract Clause of the U.S. Constitution. Thus, resolution of the state law question alone would not resolve the problem presented.

If we certified the issue of the scope of the 2005 Amendment to the New York high court, and that court agreed with our analysis, the New York court would have no choice but to determine if retroactive application violated the Contract Clause. Under New York law, "[a] statute is presumptively constitutional and should be construed in such a manner as to uphold its constitutionality." *Eaton v. N. Y. City Conciliation & Appeals Bd.*, 56 N.Y.2d 340, 346 (1982). Notwithstanding our great esteem for the New York Court of Appeals, this Court is not bound by its views with regard to the Constitution of the United States. The New York court could decide that retroactivity makes sense in light of the statute's purpose but that the Contract Clause requires a prospective view, only to have this Court reject that aspect of the New York court's analysis. Nothing would be gained from the exercise. Because the rules of statutory interpretation in New York are clear and easily applied, and the constitutional question acts effectively to veto one view of the statute, we think judicial economy merits resolution of this issue in federal court.

**II. The Constitutional Challenge**

The Contract Clause of the United States Constitution provides that "[n]o State shall . . . pass any . . . Law . . . impairing the Obligation of Contracts." U.S. Const. art. 1, § 10, cl. 1.

19

"Although the language of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.'" *Energy Reserves Group, Inc. v. Kan. Power and Light Co.*, 459 U.S. 400, 410 (1983) (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 434 (1934)). The state's police power has been described as "an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, [which] is paramount to any rights under contracts between individuals." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978). Unless the state is a party to the contract, courts generally should defer to "legislative judgment as to the necessity and reasonableness of a particular measure." *Energy Reserves*, 459 U.S. at 412-413 (quoting *United States Trust Co. v. New Jersey*, 431 U.S. 1, 22-23 (1977)).

The first step in Contract Clause analysis asks "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Energy Reserves*, 459 U.S. at 411 (quoting *Allied Structural Steel*, 438 U.S. at 244). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992). Even if a state law substantially impairs a contract, it will not be deemed unconstitutional so long as it is justified by "a significant and legitimate public purpose . . . such as the remedying of a broad and general social or economic problem." *Energy Reserves*, 459 U.S. at 411-412. This requirement "guarantees that the State is exercising its police power, rather than providing a benefit to special interests." *Id.* at 412. If such a public purpose is demonstrated, the means chosen to accomplish that goal must be "reasonable and necessary." *Sal Tinnerello & Sons, Inc.*

20

*v. Town of Stonington*, 141 F.3d 46, 54 (2d Cir. 1998) (citing *Energy Reserves*, 459 U.S. at 412-413); *see also Sanitation & Recycling Indus., Inc. v. City of N.Y.*, 107 F.3d 985, 993 (2d Cir. 1997).

We begin our analysis by observing that this Court previously viewed with skepticism a Contract Clause argument, such as the one CFCU makes here, noting that it was "unlikely that the retroactive application of New York's homestead exemption would violate the Contracts Clause." *Weber v. United States*, 484 F.3d 154, 161 (2d Cir. 2007). However, that issue was not directly before the Court in *Weber*; its resolution was not necessary to dispose of the appeal.[13] The time has come to address CFCU's constitutional claim.

Here, CFCU provided Debtors with an automobile loan; the parties undisputedly had a contractual relationship. For our purposes, CFCU is a general unsecured creditor who has not reduced the debt to judgment.[14] There can be little doubt that the increased exemption impairs CFCU's rights as a creditor; the higher exemption, if applicable, reduces the assets available for satisfaction of the debt. Thus, our analysis turns on whether that impairment is substantial.

---

[13] In *Weber*, CFCU moved for leave to take a direct appeal to this Court from a bankruptcy court order retroactively applying the 2005 Amendment to the debtor's property. *See* 484 F.3d at 157 (citing 28 U.S.C. § 158(d)(2)). We denied the motion, declining to exercise our jurisdiction to hear the appeal. *Id.* This Court concluded that it did "not perceive a conflict of such a nature that creates uncertainty in the bankruptcy courts, as all three of the courts within this circuit to have considered the question have held that New York's homestead exemption applies retroactively." *Id.* at 161. We further noted that CFCU did not show "that evaluation of the bankruptcy court's decision at this time would lead to a more rapid resolution of the case, in part because the decision does not appear to be either manifestly correct or manifestly incorrect." *Id.* In reaching this conclusion, we noted that the 2005 Amendment was "plausibly remedial" and that a Contract Clause violation was "unlikely." *Id.*

[14] CFCU does have a lien on Debtors' automobile securing the loan, but the balance due on the loan exceeds the value of the vehicle. Thus, CFCU is a general unsecured creditor.

Determining if a statute substantially impairs a contract requires an examination of "the extent to which reasonable expectations under the contract have been disrupted." *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 368 (2d Cir. 2006) (quoting *Sanitation & Recycling Indus.*, 107 F.3d at 993). Although, as the bankruptcy court in *Little* explained, the Amendment may have "modified the expectations of the parties," 2006 WL 1524594, at *12, in our view, it did not substantially disrupt the parties' reasonable expectations under the contract. New York's homestead exemption has limited New York creditors since 1850. The exemption amount has been increased several times since the exemption's inception. CFCU certainly knew that Debtors' home would be shielded to some extent from the satisfaction of a money judgment or exempted from the bankruptcy estate.

In any event, even if we characterized the impairment of the contractual relationship as substantial, we would still conclude that application of the 2005 Amendment to pre-enactment debts serves the "significant and legitimate public purpose," *Energy Reserves*, 459 U.S. at 411, of expanding the class of debtors who will be able to keep their homes despite declaring bankruptcy. The legislative determination to increase the exemption is a reasonable means of protecting New York citizens from home forfeiture.

CFCU's reliance on several of our older Contract Clause decisions is misplaced. *See, e.g.*, *Wilson v. Relin*, 135 F.2d 99 (2d Cir. 1943) (L. Hand, *J.*); *Samuels v. Quartin*, 108 F.2d 789 (2d Cir. 1940); *In re Gordon*, 90 F.2d 583 (2d Cir. 1937); *In re Messinger*, 29 F.2d 158 (2d Cir. 1928). In those cases, this Court held that New York statutes allowing debtors to exempt the proceeds of disability insurance or the cash value of life insurance policies from creditor claims could not be applied against the claims of pre-existing creditors. *See Wilson*, 135 F.2d at 100

22

(disability); *Samuels*, 108 F.2d at 791 (disability); *Gordon*, 90 F.2d at 584-586 (life insurance); *Messinger*, 29 F.2d at 161 (life insurance).[15] In *Gordon*, the Court recognized the general rule that "an impairment of a creditor's rights must be substantial in order to come within the constitutional prohibition." *Id.* at 586 (citing *Bronson v. Kinzie*, 42 U.S. (1 How.) 311 (1843)). In determining if the statute constituted a substantial impairment of creditors' rights, the *Gordon* court commented that "a workman's tools or a farmer's necessary implements may be within the protection of an exemption statute even as against prior creditors," but the circumstances surrounding life insurance, however, were "too doubtful to enable us to say that creditors would lose no substantial right if such exemption statutes were held applicable." *Id.*

The "impairment" presented here is far less substantial. The 2005 Amendment does not exempt an entire class of property previously available to creditors. New York's homestead exemption has been part of that state's legal and lending environment for more than a century and a half. Its latest incarnation increased the exemption in order to account for inflation. Moreover, our older cases may not apply with the same force today as they do not appear to fully employ current Contract Clause jurisprudence to the extent that they fail to accord sufficient deference to state legislative judgments concerning whether a statute advances a significant and legitimate public purpose. *See In re Seltzer*, 104 F.3d 234, 236 (9th Cir. 1996);[16] *Nev. Employees Ass'n, Inc.*

---

[15] In *Addiss v. Selig*, 264 N.Y. 274 (1934), the New York Court of Appeals reached the same conclusion as this Circuit.

[16] In *Seltzer*, the Ninth Circuit determined that retroactive application of a Nevada statute permitting debtors to exempt Individual Retirement Accounts from the bankruptcy estate did not violate the Contract Clause. 104 F.3d at 235. The question of whether the impairment was substantial was not at issue on appeal. The court held that application of the statute to debts incurred prior to its effective date did not violate the Contract Clause because the law served a valid public purpose and was a reasonable exercise of the state's power. *Id.* at 236-237.

23

*v. Keating*, 903 F.2d 1223, 1226 (9th Cir. 1990) (citing G. Gunther, Constitutional Law 498 (1985)).  Thus, we find that application of the 2005 Amendment to pre-existing contract debts does not violate the Contract Clause.  *Cf. Seltzer*, 104 F.3d at 235-37; *see Weber*, 484 F.3d at 161.

## CONCLUSION

In sum, the 2005 Amendment applies retroactively in post-enactment filings to contract-based debts that preceded its enactment.  Furthermore, retroactive application of the exemption does not violate the constitutional rights of pre-enactment, contract-based creditors who have not reduced the debt owed to them to judgment.  Accordingly, the judgment of the district court is AFFIRMED.

---

Although an earlier decision from that court, *see In re Bassin*, 637 F.2d 668, 670 (9th Cir. 1980), held that retroactive application of the California homestead exemption "would be an unconstitutional impairment of pre-existing contract obligations," *id.*, the *Seltzer* court observed that this case (and other cases invalidating retroactive application of state exemption statutes) was "decided before" the Supreme Court's decision in "*Energy Reserves*, and thus did not give appropriate deference to legislative judgments." 104 F.3d at 236.  The *Seltzer* court noted that the Supreme Court has "retreated from its [prior case law], and has indicated a renewed willingness to defer to the decisions of state legislatures regarding the impairment of private contracts." *Id.* (internal quotation marks and citation omitted) (alteration in original).  The court concluded that the state legislature was concerned with the possibility that, absent the exemption, the state would be forced to care for individuals "left destitute by attachment to their retirement plans." *Id.* (internal quotation marks omitted).