******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE ELAINE M. COLE
## (SC 20746)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Ecker and Alexander, Js.

*Syllabus*

Pursuant to statute (§ 55-3), "[n]o provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect."

In November, 2021, the debtor, C, filed a bankruptcy petition under chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut, claiming, inter alia, a statutory (§ 52-352b (21)) homestead exemption in the amount of $250,000. The public act (P.A. 93-301) that created the homestead exemption allowed a debtor to protect up to $75,000 of the value of his or her primary residence from attachment in postjudgment or bankruptcy proceedings. Public Act 93-301, however, included a carve-out whereby the homestead exemption could not be claimed for debts accrued prior to the act's effective date of October 1, 1993. The legislature subsequently passed an amendment (P.A. 21-161), effective October 1, 2021, that repealed the previous version of § 52-352b and replaced it with a new version, which increased the homestead exemption from $75,000 to $250,000 but did not include any carve-out for preexisting debts. The trustee of the bankruptcy estate objected to C's claimed homestead exemption of $250,000, arguing that, although her bankruptcy proceeding was commenced after October 1, 2021, all of her debts were incurred prior to that date. Relying on the principle embodied in § 55-3, the parties focused their arguments before the Bankruptcy Court on the issue of whether P.A. 21-161 enacted a procedural amendment, which presumptively applies retroactively, or a substantive amendment, which presumptively applies only prospectively. The Bankruptcy Court overruled the trustee's objection, concluding that the amendment was intended to apply retroactively to preexisting debts and, accordingly, that C was entitled to the $250,000 homestead exemption. The trustee appealed from the decision of the Bankruptcy Court to the United States District Court for the District of Connecticut, which certified to this court a question concerning whether P.A. 21-161 applied retroactively or only prospectively to debts incurred by a debtor before that act took effect. *Held*:

1. This court concluded, as a threshold matter, that the answer to the certified question was a matter of state, rather than federal, law for choice of law purposes:

   Under the federal statute (11 U.S.C. § 522 (b) (3) (A)) specifying what property can be exempted from a debtor's chapter 7 bankruptcy estate, a debtor may protect "any property that is exempt under . . . State or local law that is applicable on the date of the filing of the petition," and, accordingly, this court clarified that the question presented by this appeal was whether the expanded homestead exemption contained in P.A. 21-161 was applicable to C's case, given that the expanded exemption was in effect when her bankruptcy petition was filed but not when her underlying debts were incurred.

   Moreover, in determining whether the applicability of a state exemption statute, as recognized under 11 U.S.C. § 522 (b) (3) (A), is a matter of federal bankruptcy law or state law, this court recognized that there is a split of federal authority on this choice of law question but assumed that the Bankruptcy Court would adhere to the rule adopted by the United States Court of Appeals for the Second Circuit, pursuant to which state law governs.

2. The expanded, $250,000 homestead exemption set forth in P.A. 21-161 applies in bankruptcy proceedings filed on or after October 1, 2021, the effective date of the act, regardless of when the underlying debts

accrued:

a. The trustee could not prevail on his claim that the expanded homestead exemption does not apply to debts incurred prior to the effective date of P.A. 21-161:

P.A. 21-161 was silent as to the accrual date of the debts that are the subject of the postjudgment or bankruptcy proceeding governed by the amended homestead exemption, nothing in the language of the act indicated that the legislature had intended to carve out preexisting debts from the reach of that exemption, and § 52-352b, as part of the statutory scheme that regulates postjudgment procedures, simply defines what property is exempt, that is, what property is not subject to any court order for purposes of debt collection.

b. This court rejected the trustee's claim that it should find in P.A. 21-161 an implicit carve-out for debts accrued prior to the act's October 1, 2021 effective date insofar as the legislature had included such a carve-out in P.A. 93-301:

The trustee's argument that the legislature, having been aware of the carve-out language in P.A. 93-301, would have clearly indicated if it had intended not to include a similar carve-out for preexisting debts in P.A. 21-161 was unavailing because it was inconsistent with basic rules of statutory interpretation, pursuant to which the fact that the legislature included a special carve-out for preexisting debts in the original homestead exemption but did not include one in P.A. 21-161 indicated an intent not to exclude preexisting debts from the scope of the expanded homestead exemption set forth in P.A. 21-161.

c. There was no merit to the trustee's claim that this court should find in P.A. 21-161 an implicit carve-out for debts accrued prior to the act's October 1, 2021 effective date because a failure to do so would improperly give the act retroactive effect without the express authorization of the legislature:

Although the parties' arguments centered primarily around the issue of whether P.A. 21-161 was a procedural or substantive amendment for purposes of § 55-3, which applies only if the amendment has a "retrospective effect," this court concluded that § 55-3 did not apply to the present case because the increased homestead exemption set forth in P.A. 21-161 did not constitute retroactive legislation when C's bankruptcy proceeding was initiated after the effective date of the act.

Moreover, because it is not always apparent whether a new law has a "retrospective effect," especially when the statutory changes solely alter the future, rather than the past, legal consequences of previous transactions or occurrences, this court looked to the approaches taken by the United States Supreme Court in *Landgraf* v. *USI Film Products* (511 U.S. 244), in which the majority concluded that a new statute has a retroactive effect if it impairs established rights of the parties, imposes new duties or obligations that they could not reasonably have anticipated, or disturbs other reasonable, settled expectations, and in which the concurrence concluded that the focus of the retroactivity inquiry should not be on whether the amendment affects vested rights but, rather, on the relevant activity that the amendment regulates, and clarified that both approaches were part of a proper retroactivity analysis under Connecticut law.

The application of P.A. 21-161 to preexisting debts would not constitute a retroactive application under either of the *Landgraf* approaches.

Specifically, under the majority's approach in *Landgraf*, there was no claim that P.A. 21-161 imposed any new duties or obligations on the parties, and applying the increased homestead exemption to preexisting debts would not be fundamentally unfair, insofar as it allegedly would frustrate the settled expectations of unsecured lenders who extended credit to C while the lower, $75,000 exemption was in place, because there was no evidence in the record that C's unsecured creditors ever considered the equity in C's home or relied on the size of the homestead exemption when they decided to extend C credit, and the creditors were presumed to have been aware that the legislature could increase the size of the homestead exemption at any time and that their rights might otherwise be adversely impacted by changes in federal or state law.

Furthermore, under the concurrence's approach in *Landgraf*, applying P.A. 21-161 to preexisting debts would not qualify as a retroactive application of the law because the accrual of those debts was not the primary or principal activity that the act sought to regulate, insofar as § 52-352b is part of a chapter of the General Statutes that deals with postjudgment procedures, neither the original 1993 homestead exemption nor the 2021 amendment made any reference to the source or nature of the underlying debts involved, instead focusing entirely on the enforcement process, and, accordingly, it was clear that the purpose of the 2021 amendment was to specify the exemptions that were presently available to the debtor.

Argued December 12, 2022—officially released July 18, 2023

*Procedural History*

Petition for bankruptcy relief, brought to the United States Bankruptcy Court for the District of Connecticut, where the court, *Tancredi, J.*, overruled the trustee's objection to the debtor's claim for a homestead exemption, and the trustee appealed to the United States District Court for the District of Connecticut, where the court, *Bolden, J.*, certified a question of law to this court concerning whether No. 21-161, § 1, of the 2021 Public Acts applied retroactively to debts incurred by the debtor before the act took effect.

*Jeffrey Hellman*, for the appellant (trustee).

*Jenna N. Sternberg*, for the appellee (debtor).

*Opinion*

McDONALD, J. In 1993, the legislature, for the first time, enacted a so-called "homestead act," whereby a debtor could protect up to $75,000 of the value of a primary residence from attachment in postjudgment proceedings or bankruptcy. See Public Acts 1993, No. 93-301, § 2 (P.A. 93-301). Although P.A. 93-301 had an effective date of October 1, 1993, and thus applied to any proceedings initiated on or after that date, the act included a special carve-out: the homestead exemption could not be claimed for debts accrued prior to the effective date.[1] See P.A. 93-301, § 3. In 2021, the legislature amended the homestead act and replaced it with a new version that included several changes from the prior version of the act. For purposes of this appeal, the relevant change made by the legislature was to increase the exemption from $75,000 to $250,000,[2] but this time the legislature did not include any carve-out for preexisting debts. See Public Acts 2021, No. 21-161, § 1 (P.A. 21-161). The primary question presented by this appeal, which reaches us in the form of a certified question in a bankruptcy appeal from the United States District Court for the District of Connecticut, is whether we should nevertheless read a carve-out into the 2021 public act. We decline to do so.

I

On November 22, 2021, the debtor, Elaine M. Cole, filed a petition for bankruptcy relief under chapter 7 of the United States Bankruptcy Code; 11 U.S.C. § 701 et seq. (2018); in the United States Bankruptcy Court for the District of Connecticut. *In re Cole*, 642 B.R. 208, 211 (Bankr. D. Conn. 2022). At that time, the debtor owned a home in Mystic that she valued at $589,000, with equity of more than $350,000, and that was under contract for sale. See id., 211, 213. Pursuant to General Statutes § 52-352b (21), she claimed a homestead exemption in her home in the amount of $250,000. See id., 211, 214.

The trustee of the bankruptcy estate, Anthony S. Novak, objected to the claimed homestead exemption. Id., 211. The trustee argued, among other things, that the debtor could not use the increased homestead amount because, although the bankruptcy proceeding was commenced after the October 1, 2021 effective date of P.A. 21-161, § 1, all of the debtor's debts were incurred prior to that date. See id., 211–12.

Relying on the principle, embodied in General Statutes § 55-3,[3] that procedural amendments to a statute presumptively apply retroactively, whereas substantive amendments presumptively apply only prospectively; see, e.g., *State* v. *Nathaniel S.*, 323 Conn. 290, 295, 146 A.3d 988 (2016); the arguments of the parties before the Bankruptcy Court centered around the question of whether P.A. 21-161, § 1, enacted a procedural or

substantive amendment to the homestead act. See *In re Cole*, supra, 642 B.R. 212, 218. The Bankruptcy Court, focusing less on the procedural/substantive distinction and more on various canons of statutory construction, concluded that the amendment was intended to apply "retroactively" to preexisting debts. Id., 220–24. Accordingly, the court overruled the trustee's objection and concluded that the debtor was entitled to the $250,000 homestead exemption. Id., 224.

The trustee appealed from the decision of the Bankruptcy Court to the United States District Court for the District of Connecticut. The District Court indicated that it was inclined to agree with the conclusion of the Bankruptcy Court that P.A. 21-161, § 1, applies to preexisting debts in any bankruptcy proceeding brought on or after the effective date. Nevertheless, the District Court determined that the absence of an authoritative state court decision, the importance of the issue, and the capacity of certification to resolve the litigation all counseled for certification of the question to this court. The District Court therefore certified to this court the question of "[w]hether [P.A.] 21-161 applies retroactively to debts incurred by the debtor before [P.A.] 21-161 took effect or prospectively." We accepted certification but, pursuant to General Statutes § 51-199b (k), and for the reasons discussed in part II B 3 of this opinion, we will answer a slightly modified version of the certified question: does the expanded homestead exemption contained in P.A. 21-161, § 1, apply in bankruptcy proceedings filed on or after the effective date of the act to debts that accrued prior to that date? We answer that question in the affirmative.

## II

### A

Because the certified question involves the intersection of federal bankruptcy law and Connecticut law governing postjudgment proceedings, we first must determine, as a threshold matter, whether the answer is dictated by federal or state law. As we explain more fully hereinafter, although there is a split of federal authority on this question, we assume that the Bankruptcy Court will adhere to the choice of law rule that has been adopted by the United States Court of Appeals for the Second Circuit, pursuant to which state substantive law governs. See, e.g., *CFCU Community Credit Union* v. *Hayward*, 552 F.3d 253, 259 (2d Cir. 2009).

The federal statute at issue is 11 U.S.C. § 522, which specifies what property can be exempted from a debtor's chapter 7 bankruptcy estate.[4] The statute provides that, by default, debtors can choose to avail themselves of either the limited exemptions that are afforded under federal bankruptcy law or, if more generous, the exemptions afforded under state, local, or other federal law.[5] That provision, now codified at 11 U.S.C. § 522 (b),

was enacted in 1978, prior to the original Connecticut homestead act.

Section 522 provides in relevant part that a debtor who opts for the alternative exemption can protect "any property that is exempt under Federal [nonbankruptcy] law . . . or State or local law that is *applicable* on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition . . . ." (Emphasis added.) 11 U.S.C. § 522 (b) (3) (A) (2018). So, the question presented by this appeal is whether Connecticut's homestead exemption, as increased under P.A. 21-161, § 1, is *applicable* to the debtor's case, given that the amended, $250,000 homestead exemption was in effect when her bankruptcy petition was filed on November 22, 2021, but not when the underlying debts accrued.

The threshold question is whether the applicability of a state exemption statute, as recognized under 11 U.S.C. § 522, is determined by federal bankruptcy law, which would preempt any contrary state law under the supremacy clause of the United States constitution; see U.S. Const., art. VI, cl. 2; or is a matter of state law because the intent of Congress was to incorporate state exemption law fully into the Bankruptcy Code. The federal courts of appeals and other federal courts are divided on this question. See, e.g., J. Lockhart, Annot., "What Constitutes State or Local Law That Is Applicable on Date of Filing of Bankruptcy Petition for Purposes of Applying 11 U.S.C.A. § 522 (b) (3) (A) or Its Predecessor in Opt-Out States," 76 A.L.R. Fed. 2d 333, 405–12, §§ 27–28 (2013).

Some courts have held that, under 11 U.S.C. § 522, the Bankruptcy Code preempts any contrary state law, and, therefore, any state exemption statutes in effect at the time a bankruptcy petition is filed apply, regardless of whether the state legislature intended a particular exemption statute to apply only prospectively, retroactively, or only under certain circumstances. See, e.g., *In re Morinia*, Docket No. 11-07-12803 SA, 2008 WL 5157501, *3 (Bankr. D.N.M. August 13, 2008); *In re Skjetne*, 213 B.R. 274, 275, 278 (Bankr. D. Vt. 1997). As the United States Bankruptcy Appellate Panel of the First Circuit explained, "we must discern the outer limits of a state law's ability to control an exemption's operative characteristics in the bankruptcy universe." *In re Leicht*, 222 B.R. 670, 677 (B.A.P. 1st Cir. 1998). "[A]lthough through § 522 (b) Congress provided states with the opportunity to define the category and content of exemptions resident debtors may invoke in bankruptcy (going so far as to authorize states to opt out of the federal exemption scheme), it defined the operative effect of exemptions in bankruptcy through [§] 522 (c) and (f). . . . As a consequence, those provisions of the [state] homestead statute that limit the exemption's

vitality against certain categories of claims cannot hold sway against conflicting [Bankruptcy] Code provisions." (Internal quotation marks omitted.) Id. On this view, the answer to the certified question would be easy: because P.A. 21-161, § 1, took effect prior to the date the debtor's bankruptcy petition was filed, the new, higher exemption would apply as a matter of federal law.

The Second Circuit, however, has reached a different conclusion with respect to the choice of law question, holding that whether and to what extent an exemption is applicable on the date a petition is filed is a matter solely of state law. See *CFCU Community Credit Union* v. *Hayward*, supra, 552 F.3d 259 ("[although] federal law governs the date on which the exemption comes into play, [state] law governs the nature and scope of the exemption"); see also *First National Bank of Mobile* v. *Norris*, 701 F.2d 902, 905 (11th Cir. 1983) (rejecting argument that 11 U.S.C. § 522 preempts state law regarding retroactive application of homestead amendments). We assume that the Bankruptcy Court will adhere to Second Circuit law on this point. See, e.g., *In re Pratt & Whitney Co.*, 140 B.R. 327, 331 (Bankr. D. Conn. 1992); see also, e.g., *In re Duda*, 182 B.R. 662, 667 (Bankr. D. Conn. 1995), aff'd sub nom. *Gernat* v. *Belford*, 192 B.R. 601 (D. Conn. 1996), aff'd sub nom. *In re Gernat*, 98 F.3d 729 (2d Cir. 1996). Accordingly, we must proceed on the assumption that *Hayward* controls and that it falls to this court to determine, as a matter of Connecticut law, whether the new exemption amount contained in P.A. 21-161, § 1, applied to the debtor's bankruptcy petition filed after the effective date of that statute, regardless of when the underlying debts accrued.

### B

We turn our attention, therefore, to the trustee's argument that the legislature intended the amended homestead exemption to apply to bankruptcy petitions[6] filed on or after October 1, 2021, but did not intend debts accrued prior to that date to be subject to the higher exemption amount. We are not persuaded.

### 1

Because the applicability of the expanded homestead exemption presents a question of statutory interpretation, we begin with the text of the act. See General Statutes § 1-2z; see also *Maghfour* v. *Waterbury*, 340 Conn. 41, 46–47, 262 A.3d 692 (2021) (when addressing issue of retroactivity, we begin by asking whether legislature has expressly prescribed statute's proper reach).

Public Act 21-161, § 1, begins by repealing General Statutes (Rev. to 2021) § 52-352b in its entirety. It then provides, with respect to the homestead exemption: "The following property of any natural person shall be exempt . . . (21) The homestead of the exemptioner to the value of two hundred fifty thousand dollars, pro-

vided value shall be determined as the fair market value of the real property less the amount of any statutory or consensual lien which encumbers it, except that, in the case of a money judgment arising out of a claim of sexual abuse or exploitation of a minor, sexual assault or other wilful, wanton, or reckless misconduct committed by a natural person, to the value of seventy-five thousand dollars . . . .” P.A. 21-161, § 1. Finally, the act provides that it is “[e]ffective October 1, 2021 . . . .” P.A. 21-161, § 1.

On its face, P.A. 21-161, § 1, is silent as to the accrual date of the debts that are the subject of the postjudgment proceeding or bankruptcy governed by the amended homestead exemption. Nothing in the language of the act indicates that the legislature intended to carve out preexisting (or any other) debts from the reach of the exemption. Section 52-352b is part of chapter 906 of the General Statutes, which regulates postjudgment procedures, and the statute simply defines what property is exempt, that is, “not subject to any form of process or court order for the purpose of debt collection . . . .” General Statutes § 52-352a (3). Accordingly, on the face of the statute, there is no reason to think that the expanded homestead exemption, which undisputedly applies in all bankruptcy proceedings brought on or after the effective date, does not apply to preexisting debts. See, e.g., *Southwick at Milford Condominium Assn., Inc.* v. *523 Wheelers Farm Road, Milford, LLC*, 294 Conn. 311, 320, 984 A.2d 676 (2009) (“if the legislature had intended to create any exception to this rule . . . we must assume that it would have said so expressly”); *Earl B.* v. *Commissioner of Children & Families*, 288 Conn. 163, 175–76, 952 A.2d 32 (2008) (similar); *Board of Education* v. *Booth*, 232 Conn. 216, 221, 654 A.2d 717 (1995) (“there is nothing in the definition of ‘earnings’ under [General Statutes] § 52-350a (5) to suggest that the legislature intended to limit the exemption from prejudgment garnishment only to those debts payable prior to the termination of the employment relationship”).

We do not understand the trustee to contest that this is the plain meaning of the statutory text. Rather, he contends that we should nevertheless find an implicit carve-out for preexisting debts for two reasons. First, the public act that created the prior version of the statute contained such a carve-out. See P.A. 93-301, §§ 2 and 3. Second, interpreting P.A. 21-161, § 1, not to include a similar carve-out would be to give the act retroactive effect without the express authorization of the legislature. We consider each argument in turn.

2

The trustee first contends that we should read a carve-out for preexisting debts into P.A. 21-161, § 1, because the legislature included such a carve-out in P.A. 93-301, the act that created the initial homestead

exemption. Public Act 93-301, § 3, provides: "This act shall take effect October 1, 1993, *and shall be applicable to any lien for any obligation or claim arising on or after said date.*" (Emphasis added.) The federal courts have read the highlighted language to create a carve-out for preexisting debts in bankruptcy proceedings. See, e.g., *Gernat* v. *Belford*, 192 B.R. 601, 604–605 (D. Conn.), aff'd sub nom. *In re Gernat*, 98 F.3d 729 (2d Cir. 1996). The trustee's argument appears to be that the legislature, having been aware of the language and judicial interpretations of the prior act, would have clearly indicated had it intended not to include a similar carve-out in P.A. 21-161, § 1.

Even if we were to agree with the trustee that it is appropriate to look to the legislative history of the act, however; see *Cohen* v. *Rossi*, 346 Conn. 642, 665–66, A.3d (2023) (plurality opinion); see also id., 705 n.10 (*Ecker*, *J.*, concurring in part and concurring in the judgment); we are not persuaded that the trustee's interpretation is correct.[7] Indeed, the trustee's argument runs headlong into a basic rule of statutory interpretation. "As we have stated many times, [when] a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." (Internal quotation marks omitted.) *Asylum Hill Problem Solving Revitalization Assn.* v. *King*, 277 Conn. 238, 256, 890 A.2d 522 (2006). This principle applies with equal force to reenactments of previous statutes. See, e.g., *Gilmore* v. *Pawn King, Inc.*, 313 Conn. 535, 543–48, 98 A.3d 808 (2014).

The fact that the legislature included a special carve-out for preexisting debts in the original homestead act but did not include one in the 2021 act indicates an intent *not* to exclude preexisting debts from the scope of the expanded homestead exemption. Indeed, it makes perfect sense that, when the legislature increased the homestead exemption in 2021 to keep pace with inflation, it would have opted to avoid the practical problems that could have arisen from carving out preexisting debts at that time.[8]

3

Finally, we turn our attention to the issue at the core of the certified question, as originally framed by the District Court. The trustee's primary argument is that interpreting P.A. 21-161, § 1, not to include a carve-out for preexisting debts would give the act retroactive effect without the express authorization of the legislature. Specifically, the trustee contends that P.A. 21-161, § 1, effected a substantive change in the law and that, under § 55-3, substantive amendments presumptively apply on a solely prospective basis. The debtor counters that the amendment was procedural rather than substantive in nature and, therefore, can be applied retroac-

tively. In the alternative, the debtor argues that, regardless of whether we characterize the amendment as substantive or procedural, in the present case, it is being applied on a solely prospective basis, insofar as it applies to a bankruptcy proceeding that was initiated after the effective date of the act. Because we agree with the debtor that the enactment of the higher homestead exemption does not constitute retroactive legislation when applied to postenactment petitions, we need not resolve the question of whether the amendment was procedural or substantive in nature. In short, there is no retroactivity problem here.

"It is well established that § 55-3 is a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only. . . . The rule is rooted in the notion that it would be unfair to impose a substantive amendment that changes the grounds [on] which an action may be maintained on parties who have already transacted or who are already committed to litigation." (Internal quotation marks omitted.) *Shannon* v. *Commissioner of Housing*, 322 Conn. 191, 202, 140 A.3d 903 (2016). This rule is easier stated than applied. See, e.g., id., 204. It is not always clear, for example, whether a particular change in the General Statutes qualifies as substantive or procedural. See, e.g., *Coley* v. *Camden Associates, Inc.*, 243 Conn. 311, 317–18, 702 A.2d 1180 (1997); see also, e.g., *Casiano* v. *Commissioner of Correction*, 317 Conn. 52, 80, 110, 115 A.3d 1031 (2015) (majority and dissenting justices disagreed over whether *Miller* v. *Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), announced watershed rule of criminal procedure for purposes of retroactivity), cert. denied sub nom. *Semple* v. *Casiano*, 577 U.S. 1202, 136 S. Ct. 1364, 194 L. Ed. 2d 376 (2016). Most of the briefing in the present case is addressed to that issue.

But dispositive considerations can arise well before we reach the substantive/procedural junction. Section 55-3 comes into play—that is, we only need to determine if a new provision of the General Statutes is substantive or procedural—only if the amendment would have a "retrospective effect." Section 55-3 does not define the term "retrospective effect," however, and whether a new law would have such an effect in a given case is not always apparent. See, e.g., *Shannon* v. *Commissioner of Housing*, supra, 322 Conn. 204 ("deciding when a statute operates retroactively is not always a simple or mechanical task" (internal quotation marks omitted)). As United States Supreme Court Justice Antonin Scalia explained in *Martin* v. *Hadix*, 527 U.S. 343, 119 S. Ct. 1998, 144 L. Ed. 2d 347 (1999), asking whether a change in the law is intended to operate retroactively "leaves open the key question: retroactive in reference to what?" Id., 362 (Scalia, J., concurring in part and concurring in the judgment).

Many retroactivity cases, and most of the easy ones,

involve "what modern scholarship calls *primary retroactivity*—altering the past legal consequences of past actions. [This includes] legislative creation of criminal or civil liability for completed acts, significantly lessening or adding onto the burdens of past contracts (particularly debt contracts), legislative termination of accrued claims for relief [regardless of whether they are] the subject of a pending action, and legislative undoing of final judgments no longer subject to appeal." (Emphasis added; footnotes omitted; internal quotation marks omitted.) A. Woolhandler, "Public Rights, Private Rights, and Statutory Retroactivity," 94 Geo. L.J. 1015, 1022–23 (2006). These situations tend to be governed by well established rules, such as that "[a] criminal statute is said to have [primary] retroactive application if it applies to crimes allegedly committed prior to its date of enactment." (Internal quotation marks omitted.) *State* v. *Bischoff*, 337 Conn. 739, 746, 258 A.3d 14 (2021); see also General Statutes § 1-1 (u) (passage or repeal of act presumptively does not affect pending actions).

More troublesome is so-called secondary retroactivity, which refers to statutory changes that solely alter the *future* legal consequences of past transactions or occurrences. See, e.g., *Bowen* v. *Georgetown University Hospital*, 488 U.S. 204, 219, 109 S. Ct. 468, 102 L. Ed. 2d 493 (1988) (Scalia, J., concurring) (discussing distinction between primary and secondary retroactivity); J. Laitos, "Legislative Retroactivity," 52 Wash. U. J. Urb. & Contemp. L. 81, 84–85 (1997) (same). Many changes in the law could be characterized as retroactive in some respect. That is to say, they attach some new, future legal consequences to actions that were taken or decisions that were made prior to their enactment. See, e.g., A. Woolhandler, supra, 94 Geo. L.J. 1022 ("[s]ome modern judges and even more modern scholars see the retroactivity-prospectivity line in the civil context as logically illusory, because all legal change may defeat expectations, creating winners and losers"). That alone is not enough to render a statute retroactive. See, e.g., D. Bassett, "In the Wake of *Schooner Peggy*: Deconstructing Legislative Retroactivity Analysis," 69 U. Cin. L. Rev. 453, 467 (2001) ("[e]ven when laws expressly state that they are to be applied prospectively, it is virtually certain that they will affect expectations and prior transactions"). Indeed, we frequently have recognized that "a statute does not operate [retroactively] merely because it is applied in a case arising from conduct antedating the statute's enactment . . . or upsets expectations based in prior law." (Internal quotation marks omitted.) *Maghfour* v. *Waterbury*, supra, 340 Conn. 49–50.

Take alimony, for example. The legislature might amend the alimony laws to make them less favorable to either the payer or the payee. Such a law would almost certainly qualify as retroactive if applied to divorces and alimony awards that were finalized prior

to its passage, and we would require a clear statement of legislative intent before applying it to them.[9] But, surely, applying the new law in a future divorce action to a couple who married in 1990 would not be characterized as a retroactive application, even though the substantive legal rules and duties that govern the couple will now differ from those that were in place when they made the choice to marry. In that case, the opposite presumption applies; we would assume that the new rules do apply to existing marriages, unless the legislature provides otherwise. The fact that the change in the law is substantive is of little moment. The reason for the different outcome is that the relevant reference point for purposes of retroactivity is the divorce, which happens after the change in the law, and not the marriage, which happened before.

The relevant reference point is not always so intuitively clear. *Hadix* was a particularly thorny case. The attorney's fee statute at issue in that case arguably could have been retroactively applicable to five different categories of events.[10] Before the United States Supreme Court could assess whether the ordinary presumption against retroactivity applied, the court first had to identify the relevant reference point or points. See *Martin* v. *Hadix*, supra, 527 U.S. 357–58.

In the present case, as in the alimony hypothetical, there really are just two possibilities. The trustee contends that the accrual of the debts qualifies as one relevant reference point. If we permit the debtor to claim the expanded homestead exemption with respect to debts that accrued prior to the passage of P.A. 21-161, § 1, then its application will be retroactive as to those debts and should be permitted only if the legislature demonstrated an intent for the amendment to apply retroactively.

The debtor disagrees. She contends that the only relevant consideration is when her bankruptcy proceeding was commenced, as the relevant reference point is the initiation of the bankruptcy proceeding, not the debts to which the homestead exemption would apply. If the expanded homestead exemption were applied to a *previously* commenced bankruptcy proceeding, then a retroactivity issue would arise. But, she contends, merely to apply the expanded exemption in a bankruptcy proceeding that was commenced after the effective date of P.A. 21-161, § 1, does not raise any retroactivity concerns, regardless of when the debts accrued, and, so, § 55-3 simply does not apply here.

For secondary retroactivity claims of this sort, courts, including this court, have struggled to identify the proper reference point or points and to define exactly when a new law so alters the future legal consequences of prior conduct that it can be said to operate retroactively with respect to that conduct. The seminal case in which the United States Supreme Court attempted

to resolve these issues was *Landgraf* v. *USI Film Products*, 511 U.S. 244, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994). In *Landgraf*, a five justice majority recognized that the high court had used various formulations to articulate when a substantive change in the law is being applied retroactively, including that a statute or law is retroactive if it "changes the legal consequences of acts completed before its effective date"; (internal quotation marks omitted) id., 269 n.23; "gives a quality or effect to acts or conduct [that] they did not have or did not contemplate when they were performed"; (internal quotation marks omitted) id.; or "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past . . . ." (Internal quotation marks omitted.) Id., 269. Ultimately, the *Landgraf* majority settled on the following formulation: "[T]he court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates retroactively comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." (Internal quotation marks omitted.) Id., 269–70. Put differently, "[a] new statute would have retroactive effect . . . [if] it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id., 280; see also *Martin* v. *Hadix*, supra, 527 U.S. 358 (retroactivity assessment "should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations" (internal quotation marks omitted)).

The *Landgraf* majority's formulation certainly covers the full ambit of primary retroactivity. With respect to secondary retroactivity, however, the guidance is less instructive. As we discussed, virtually every substantive change in the law has the potential to upset someone's expectations or impose new consequences on some prior actions and decisions. Under the majority approach in *Landgraf*, the more settled and reasonable those expectations, the more likely we are to deem the change retroactive. But the majority readily admits that this analysis is a subjective one, recognizing that its formulation "will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity." *Landgraf* v. *USI Film Products*, supra, 511 U.S. 270.

In a concurring opinion, Justice Scalia, joined by two other members of the court, proposed a different approach to retroactivity questions. See *Landgraf* v. *USI Film Products*, 511 U.S. 244, 290, 114 S. Ct. 1522, 128 L. Ed. 2d 229 (1994) (Scalia, J., concurring in the judgments). The concurrence argued that "[t]he critical

issue . . . is not whether the rule affects vested rights . . . but rather what is the relevant activity that the rule regulates. [In the absence of a] clear statement otherwise, only such relevant activity [that] occurs after the effective date of the statute is covered. Most statutes are meant to regulate primary conduct, and hence will not be applied in trials involving conduct that occurred before their effective date. But other statutes have a different purpose and therefore a different relevant retroactivity event." (Emphasis omitted; internal quotation marks omitted.) Id., 291 (Scalia, J., concurring in the judgments). By way of example, the concurrence explained, "[a] new ban on gambling applies to existing casinos and casinos under construction . . . even though it attaches a new disability to those past investments. The relevant retroactivity event is the primary activity of gambling, not the primary activity of constructing casinos." (Citation omitted; internal quotation marks omitted.) Id., 293–94 n.3 (Scalia, J., concurring in the judgments).

Although the majority's approach in *Landgraf* is, of course, the law of the land, at least as far as federal law is concerned, the United States Supreme Court has, at times, also relied on the *Landgraf* concurrence. See, e.g., *Hughes Aircraft Co.* v. *United States ex rel. Schumer*, 520 U.S. 939, 947, 117 S. Ct. 1871, 138 L. Ed. 2d 135 (1997) (majority approach in *Landgraf* is not "the exclusive definition of presumptively impermissible retroactive legislation"); id., 951 (citing concurrence's approach); see also, e.g., *Vartelas* v. *Holder*, 566 U.S. 257, 269–70, 132 S. Ct. 1479, 182 L. Ed. 2d 473 (2012) (part of what court considers in assessing whether application of statute would be retroactive is what primary activity Congress sought to regulate). Accordingly, the lower federal courts have found both approaches instructive when faced with thorny questions regarding secondary retroactivity. See, e.g., *Covino* v. *Reopel*, 89 F.3d 105, 106–108 (2d Cir. 1996). Insofar as our prior retroactivity cases have not provided adequate guidance in this respect, we take this opportunity to clarify that both approaches are part of a proper retroactivity analysis under Connecticut law.

In this case, both the majority's and the concurrence's approaches in *Landgraf* point to the same result: application of P.A. 21-161, § 1, to preexisting debts would not constitute a retroactive application. Under the majority's approach, we look to factors such as whether allowing the debtor to avail herself of the higher homestead exemption would impair established rights of the creditors or the trustee, impose new duties or obligations that they could not reasonably have anticipated, or disturb other reasonable, settled expectations. See *Landgraf* v. *USI Film Products*, supra, 511 U.S. 270, 280. There is no claim here that P.A. 21-161, § 1, imposed any new duties or obligations on the parties.

With respect to the rights and expectations of the parties regarding the unsecured debts at issue in this case, we are persuaded by the following analysis: "The reality of modern commercial transactions is that a lender who reasonably expects specific property to be available to satisfy an obligation . . . takes a secured position in the property. A lender's expectation of later realization of payment from unsecured property in existence at the time of contract is, [in the absence of] unusual circumstances, an expectation founded on pure speculation. Realization of payment from such property is necessarily dependent [on] circumstances and rights that do not exist at the time of [the] unsecured contract and that are not created by it. It is dependent [on] continued retention of ownership and equity in the property by a debtor as well as the subsequent creation of a lien by judgment and/or levy.

"A creditor's right to enforcement of the contract through remedy of judgment and levy against specific unsecured property of a debtor is an implied contract right. But the contractual relationship of parties is not substantially impaired by later legislation compromising or eliminating that right unless the right otherwise has substantial value to the contractual relationship at the time of the legislation complained of. [When] an unsecured claim has not been reduced to judgment prior to such legislation, the abstract right of potential enforcement out of specific unsecured property, standing alone, ordinarily has no substantial value to the contractual relationship in light of modern commercial transactions. This is particularly so [when] the legislation compromising or eliminating the right is in an area of established, long-standing legislative control and regulation, such as homestead exemption laws. The abstract right is simply one without reasonable expectation of fulfillment." (Footnote omitted.) *In re Johnson*, 69 B.R. 988, 993 (Bankr. D. Minn. 1987); see also *Central Bank* v. *Hickey*, 238 Conn. 778, 784, 680 A.2d 298 (1996) ("the very nature of an unsecured debt is that the creditor has no current legal interest in the assets of its debtor"); *Massa* v. *Nastri*, 125 Conn. 144, 147, 3 A.2d 839 (1939) (established rights that are presumptively secure from retroactive civil legislation "must be something more than such a mere expectation as may be based [on] an anticipated continuance of the present general laws" (internal quotation marks omitted)).

For this reason, we reject the trustee's argument that applying the increased homestead exemption to preexisting debts would be fundamentally unfair because it would frustrate the settled expectations of unsecured lenders who extended credit while the lower, $75,000 exemption was in place. There is no evidence in the record that the debtor's creditors ever considered the equity in her house, much less that they relied to their detriment on the size of the Connecticut homestead

exemption when they decided to extend her credit. Rather, the unsecured creditors are presumed to have been aware that the legislature could increase the size of the homestead exemption at any time and that their rights might otherwise be adversely impacted by changes in federal or state law. See, e.g., *CFCU Community Credit Union* v. *Hayward*, supra, 552 F.3d 268; see also, e.g., *In re Van Hove*, 78 B.R. 917, 920 (N.D. Iowa 1987) (lenders' reasonable contract expectations were not impaired by application of increased exemption, in light of state's "clearly established . . . rule that the extent of the debtor's exemption rights [is] determined by reference to the exemption statutes in effect on the date the bankruptcy petition was filed, *regardless of when the debts arose*" (emphasis in original)). Indeed, the debtor could have simply shielded additional assets by selling her Connecticut home and relocating to one of the many states with larger (in some cases, unlimited) homestead exemptions. See, e.g., T. Tarvin, "Bankruptcy, Relocation, and the Debtor's Dilemma: Preserving Your Homestead Exemption Versus Accepting the New Job Out of State," 43 Loy. U. Chi. L.J. 141, 145 (2011). Any expectation that the debtor would be perpetually limited to a $75,000 exemption was, in short, unreasonable.

The result is the same under the concurrence's approach in *Landgraf*. See *Landgraf* v. *USI Film Products*, supra, 511 U.S. 291 (Scalia, J., concurring in the judgments). Applying P.A. 21-161, § 1, to preexisting debts would not qualify as a retroactive application of the law because the *accrual* of those debts is not the principal activity that the law seeks to regulate. See id. As we discussed; see footnote 6 of this opinion; § 52-352b is part of chapter 906, which deals with postjudgment procedures, and the title of P.A. 21-161 is "An Act Concerning Property That Is Exempt from a Judgment Creditor." Neither the original homestead act nor the 2021 amendment makes any reference whatsoever to the source or nature of the underlying debts involved. The focus, rather, is entirely on the enforcement process—what exemptions are available to the debtor *during the bankruptcy or postjudgment proceeding*.[11] Public Act 21-161, § 1, provides that the homestead exemption "shall be determined as the fair market value of the real property less the amount of any statutory or consensual lien which encumbers it" at the time of the proceeding, not when the debt or debts accrued. It is clear that the purpose of the act is to specify the exemptions that are *presently* available to a debtor. Indeed, counsel for the trustee conceded at oral argument before this court that the primary purpose of the statute is to allow debtors to shield from creditors a portion of the equity in their home. For this reason, applying the expanded homestead exemption to a bankruptcy proceeding that was initiated on or after the effective date of the act does not constitute a retroactive application, any more than

a new law governing divorces would be retroactive with respect to already married couples. That result is consistent with this court's prior secondary retroactivity cases.[12]

We thus conclude that P.A. 21-161, § 1, is not retroactive as applied to the debtor's bankruptcy petition. Accordingly, § 55-3 is not applicable, and we need not resolve the dispute between the parties as to whether the 2021 amendment effected a substantive or procedural change in the law. See *State* v. *Faraday*, 268 Conn. 174, 197 and n.11, 842 A.2d 567 (2004). Because the legislature did not direct otherwise, the expanded homestead exemption contained in P.A. 21-161, § 1, applies in all bankruptcy and postjudgment proceedings initiated on or after the effective date of the act, regardless of when the underlying debts accrued.

The answer to the certified question, as reformulated, that is, does the expanded homestead exemption contained in P.A. 21-161, § 1, apply in bankruptcy proceedings filed on or after the effective date of the act to debts that accrued prior to that date, is "yes."

In this opinion the other justices concurred.

[1] The relevant statutory language is set forth in part II B 2 of this opinion.

[2] The act maintained the $75,000 exemption for money judgments arising out of certain tort claims that are not relevant to the present case. Public Acts 2021, No. 21-161, § 1; see also part II B 1 of this opinion.

[3] General Statutes § 55-3 provides: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect."

We will use the terms "retrospective" and "retroactive" interchangeably.

[4] "Under the [federal Bankruptcy] Code, all property of the debtor, including exempt property, initially becomes part of the bankruptcy estate. The debtor is thereafter permitted to assert exemptions by filing a list of property that he or she claims as exempt. . . . [T]he exemptions augment the debtor's 'fresh start' by allowing the debtor to take back certain assets from the bankruptcy estate." (Citations omitted.) *Gernat* v. *Belford*, 192 B.R. 601, 603 (D. Conn.), aff'd sub nom. *In re Gernat*, 98 F.3d 729 (2d Cir. 1996).

[5] Under the Bankruptcy Code, states can choose to opt out of the federal bankruptcy exemptions, so that only those afforded by state law are available in a federal bankruptcy proceeding conducted in that state. See 11 U.S.C. § 522 (b) (2) (2018). Approximately one third of the states, including Connecticut, have not opted out. See, e.g., G. Sullivan, "A Fresh Start to Bankruptcy Exemptions," 2018 BYU L. Rev. 335, 339 (2018); J. Salisbury, Note, "Are They or Aren't They 'Retirement Funds'? The Case for Including Funds from an Inherited IRA in a Debtor's Bankruptcy Estate," 80 Mo. L. Rev. 871, 884 n.142 (2015).

[6] The amended homestead exemption is codified at § 52-352b (21). By its terms, § 52-352b makes no mention of bankruptcy proceedings. Indeed, on its face, all of chapter 906 of the General Statutes is dedicated only to postjudgment proceedings. Nevertheless, there is little doubt that the legislature intended the homestead exemption, like all of the exemptions contained in § 52-352b, to be available in federal bankruptcy proceedings under 11 U.S.C. § 522 (b), as well.

Section 52-352b begins with the statement that "[t]he following property of any natural person shall be exempt . . . ." General Statutes § 52-352a (3), in turn, defines "exempt" expansively as "not subject to *any form of process* or court order for the purpose of debt collection . . . ." (Emphasis added.) To the extent that the statutory language is ambiguous in this respect, the legislative history confirms that the homestead exemption was intended to be used primarily in federal bankruptcy proceedings. This point is made repeatedly in the legislative histories of both the original version of the homestead act and the 2021 amendment. See, e.g., 36 H.R. Proc., Pt.

30, 1993 Sess., p. 10,828, remarks of Representative Dale W. Radcliffe ("[t]he amendment merely adds to several of those exemptions in the event of bankruptcy"); id., pp. 10,849–50, remarks of Representative Lee A. Samowitz (discussing application of homestead exemption in foreclosure and bankruptcy); id., p. 10,857, remarks of Representative Radcliffe ("[o]nly two states . . . provide no protection [whatsoever] for a . . . resident in the event of bankruptcy and that is really what this does"); see also, e.g., 64 H.R. Proc., Pt. 6, 2021 Sess., p. 4170, remarks of Representative Craig Fishbein (discussing exemptions in bankruptcy context); Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 2021 Sess., pp. 1454–58, remarks of Attorney Susan M. Williams (discussing exemption in bankruptcy context); id., p. 1456, remarks of Attorney Williams ("three decades is much too long to wait to amend the home bankruptcy exemptions").

[7] Likewise, we have reviewed the legislative history of P.A. 21-161, § 1, and, to the extent that it is relevant, we find therein no support for the trustee's contention that the legislature intended to create a new carve-out for preexisting debts.

[8] As the Bankruptcy Court observed, if P.A. 21-161, § 1, repealed the prior homestead exemption, but the expanded one was applicable only to those debts accrued on or after October 1, 2021, then the practical effect could have been to create a "donut hole" in which the exemption was temporarily abolished in its entirety. See *In re Cole*, supra, 642 B.R. 221. That was certainly not the intent of the legislature. Furthermore, the Bankruptcy Court explained, even if the original homestead exemption did continue to follow debts accrued while it was in effect, the trustee's interpretation would significantly and unnecessarily complicate bankruptcy proceedings, as different exemption amounts could apply to portions of different debts that were accrued before and after the effective date. See id. ("asserting two applicable state homestead exemptions would be incongruous and would irreconcilably complicate the administration of a bankruptcy estate"); see also *In re Skjetne*, supra, 213 B.R. 278 (with respect to revolving credit accounts, cautioning about "the tremendous cost . . . and the impossible task of knowing what debt is incurred prior to . . . and what debt is incurred after the effective date of the homestead amendment" (internal quotation marks omitted)).

[9] This assumes that such application satisfied all relevant constitutional restraints. The question of whether application of a new or amended statute qualifies as retroactive—a matter largely of statutory interpretation—is distinct from the question of whether it violates the contract clause of the federal constitution or the ex post facto, takings, or due process provisions of the federal or state constitutions.

[10] Hadix addressed a provision of the Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, § 803, 110 Stat. 1321, 1321-72 (codified as amended at 42 U.S.C. § 1997e (d) (3)), that placed new limits "on the fees that may be awarded to attorneys who litigate prisoner lawsuits." *Martin* v. *Hadix*, supra, 527 U.S. 347. In that case, the limits arguably could have applied "retroactively" with respect to five different points in time or categories of events: "(1) the alleged violation [on] which the fee-imposing suit is based (applying the new fee rule to any case involving an alleged violation that occurred before the PLRA became effective would be giving it retroactive application); (2) the lawyer's undertaking to prosecute the suit for which attorney's fees were provided (applying the new fee rule to any case in which the lawyer was retained before the PLRA became effective would be giving it retroactive application); (3) the filing of the suit in which the fees are imposed (applying the new fee rule to any suit brought before the PLRA became effective would be giving it retroactive application); (4) the doing of the legal work for which the fees are payable (applying the new fee rule to any work done before the PLRA became effective would be giving it retroactive application); and (5) the actual award of fees in a prisoner case (applying the new fee rule to an award rendered before the PLRA became effective would be giving it retroactive application)." (Internal quotation marks omitted.) Id., 362–63 (Scalia, J., concurring in part and concurring in the judgment).

[11] Although the 2021 amendment maintained the $75,000 cap on the homestead exemption for debts arising from certain categories of legal claims, it did so only with respect to *money judgments* arising out of those claims. See General Statutes § 52-352b (21) (maintaining prior homestead exemption "in the case of a *money judgment* arising out of a claim of sexual abuse or exploitation of a minor, sexual assault or other wilful, wanton, or reckless misconduct committed by a natural person" (emphasis added)).

[12] See, e.g., *Commissioner of Correction* v. *Freedom of Information Commission*, 307 Conn. 53, 69–70, 52 A.3d 636 (2012) (application of nondisclosure rule to previously detained individuals would not be retroactive); *Contractor's Supply of Waterbury, LLC* v. *Commissioner of Environmental Protection*, 283 Conn. 86, 88–89, 109–10, 925 A.2d 1071 (2007) (law barring location of asphalt plants in proximity to watercourses was not retroactive as applied to prior permit application); *Schieffelin & Co.* v. *Dept. of Liquor Control*, 194 Conn. 165, 172–76, 479 A.2d 1191 (1984) (statute that prohibited termination of wholesale liquor distributorships except for cause applied prospectively to all terminations regardless of whether distributorships predated or postdated statute); *Nagle* v. *Wood*, 178 Conn. 180, 187, 423 A.2d 875 (1979) (statute expanding inheritance rights of "illegitimate children" operated prospectively as to future deaths but, apparently, encompassed children born before enactment); *Hartford* v. *Suffield*, 137 Conn. 341, 343–45, 77 A.2d 760 (1950) (in action to recover cost of supporting "paupers," statute providing that " '[a]ny person, having a settlement in any town in this state, who shall have resided outside of said town for a period of four consecutive years, shall be deemed to have lost his settlement therein' " was prospective in effect because it governed actions brought after its operative date, even though it altered legal status of persons who relocated prior to that date).